[No. S166402. Apr. 5, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JEROME SUTTON et al., Defendants and Appellants.

COUNSEL

William L. Heyman, under appointment by the Supreme Court, for Defendant and Appellant Michael Jerome Sutton.

J. Courtney Shevelson, under appointment by the Supreme Court, and Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant Willie J. Jackson.

Michael P. Judge, Public Defender (Los Angeles) and John Hamilton Scott, Deputy Public Defender for Public Defender of Los Angeles County as Amicus Curiae on behalf of Defendants and Appellants.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews, Lawrence M. Daniels and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), Irene Wakabayashi, Head Deputy District Attorney, Phyllis C. Asayama and Shirley S. N. Sun, Deputy District Attorneys, for District Attorney of Los Angeles County as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

GEORGE, C. J.—Penal Code section 1382—one of the principal provisions implementing California's statutory right to a speedy trial—provides that when a defendant charged with a felony is not brought to trial within 60 days of arraignment on an indictment or information (and the defendant has not expressly or impliedly consented to having trial set for a date beyond that period), the criminal charges against the defendant shall be dismissed unless there is "good cause" for the delay.

In the present case, on the 60th day after arraignment, the appointed counsel of one of two jointly charged defendants was engaged in another trial

that had extended longer than anticipated but that was expected to be completed very shortly. For that reason, the trial court found there was good cause to delay the trial of both defendants (without their consent) on a day-to-day basis until the attorney's other trial was completed. Ultimately, the trial in the present proceeding commenced on the 66th day after arraignment. At that trial, both defendants were convicted of all charged offenses.

In the Court of Appeal, defendants principally contended that the trial court erred in finding that appointed counsel's engagement in another trial constituted good cause to delay the trial in this case beyond the 60th day without the consent of defendants, maintaining that the trial court's finding of good cause conflicted with this court's decision in *People v. Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738] (*Johnson*) and subsequent cases that applied the holding in *Johnson*. The Court of Appeal rejected defendants' contention, concluding that the circumstances of this case were distinguishable from *Johnson*. We granted review to consider the validity of the conclusion reached by the Court of Appeal.

In this court, defendants vigorously assert that the Court of Appeal's decision is inconsistent with this court's holding in *Johnson*, *supra*, 26 Cal.3d 557. The Attorney General disputes this assertion, and further requests that we reconsider the holding in *Johnson* itself.

As we explain, although there is language in the opinion in *Johnson*, *supra*, 26 Cal.3d 557, that supports defendants' position, a careful reading of the entire decision demonstrates that the language in *Johnson* relied upon by defendants is overbroad and should be clarified. The circumstances presented in *Johnson*—in which a lengthy delay in bringing a criminal case to trial was attributable to the state's chronic failure to provide a number of public defenders sufficient to enable indigent defendants to proceed to trial within the presumptive statutory period—are clearly distinguishable from those in the present case. Here, trial was delayed on a day-to-day basis for a brief period of time in order to permit one codefendant's appointed counsel to complete an ongoing trial in another case that ran longer than had been anticipated, a delay that—unlike the delay in *Johnson*—cannot fairly or reasonably be attributed to the fault or neglect of the state. We conclude that *Johnson* should not be understood to preclude a trial court from finding good cause to delay trial under the circumstances presented by the case before us and accordingly affirm the judgment of the Court of Appeal upholding the trial court's action.

## I

### A

The facts giving rise to the criminal charges against defendants Willie J. Jackson and Michael Jerome Sutton (set forth verbatim from the Court of Appeal's opinion) are as follows:

On May 31, 2006, Officer Anthony Jackson [(Officer Jackson)], a member of the [Los Angeles Police Department's] narcotics division buy team, was working undercover at 7th and Ceres in Los Angeles. Defendant Jackson was counting money on Ceres. The officer looked at defendant Jackson, who approached the officer and asked what he wanted. The officer said he wanted "a 20," meaning $20 worth of [drugs]. Defendant Jackson said he had to get it; he crossed the street to a waist-high camping tent, where [defendant] Sutton was waiting.

Sutton and defendant Jackson talked, although the officer could not overhear their conversation. Sutton opened a white bottle out of which he poured an off-white solid substance into his hand and gave it to defendant Jackson. Defendant Jackson walked back to the officer and asked him for the money. The officer gave defendant Jackson a prerecorded $20 bill, and defendant Jackson gave the officer an off-white solid substance resembling rock cocaine. As the officer walked away, he signaled to his partners that the buy was complete.

Jackson was arrested. Officers recovered $14 from his pants pockets. Sutton was arrested. Officers recovered an off-white substance resembling rock cocaine, a white canister also containing an off-white substance resembling cocaine, and $44 from him. Detective Vip Kanchanamongkol, who was in charge of the operation, compared a $20 bill recovered from Sutton to the prerecorded bill Officer Jackson used to buy the drugs from defendant Jackson. The bills matched. Testing confirmed that the substance Officer Jackson bought was 0.33 grams of cocaine base and that the substance recovered from Sutton was 0.99 grams of cocaine base. [End of quoted passage from Court of Appeal opinion.]

### B

As just noted, defendants were arrested on May 31, 2006—immediately following the drug transaction—and a felony complaint was originally filed against both of them on June 2, 2006, charging Jackson and Sutton with sale of a controlled substance (Health & Saf. Code, § 11382) and charging Sutton

additionally with possession of cocaine base for sale (Health & Saf. Code, § 11351.5).

Under Penal Code section 859b, in the absence of a waiver or unless good cause exists, a preliminary hearing must be held within 10 court days of the date on which a defendant is arraigned on a complaint. On June 16, 2006—which the trial court described as day "10 of 10"—neither defendant was present in the court in which the preliminary hearing was set, apparently because the defendants, both of whom were in custody, had been brought to the wrong courthouse. At that time, the trial court dismissed the complaint (as required by § 859b), and Sutton was released from custody. Jackson remained in custody on a probation revocation. The trial court stated that it assumed the People would refile the complaint.

The People refiled the felony complaint three days later on June 19, 2006, and Sutton was again arrested and placed in custody. (Thereafter both defendants remained in custody throughout the pretrial proceedings.) After a preliminary hearing, Sutton and Jackson were held to answer and were arraigned on an information on July 21, 2006. Trial of the matter then was scheduled for Monday, September 11, 2006, as day "52 of 60" for purposes of Penal Code section 1382.[1] (Under § 1382, in a felony case a defendant must be brought to trial within 60 days of his or her arraignment on an indictment or information, unless (1) the defendant enters a "general waiver" (§ 1382, subd. (a)(2)(A)); (2) the defendant "requests or consents to" a trial date beyond the 60-day period, in which case he or she shall be brought to trial within 10 days of the date set for trial (§ 1382, subd. (a)(2)(B)); or (3) "good cause" for setting a trial date beyond that period is shown (§ 1382, subd. (a)).)

The trial date later was changed to Tuesday, September 12, 2006—day "53 of 60"—and on September 12 all parties and counsel[2] appeared in department 111 and announced ready for trial, although Jackson's appointed counsel, Steven Flowers, stated that he was "supposed to start trial today" in a case "which I think will settle." Flowers further stated: "I am supposed to start another trial tomorrow [(Wednesday, Sept. 13)] which will not settle. I am already in [Department] 100 on Thursday, and the date for this case to go to

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The record reflects that Jackson was represented at the September 12, 2006 proceeding and in all subsequent proceedings by Steven Flowers, an appointed bar-panel attorney, and that Sutton was represented at the September 12 proceedings and all subsequent proceedings by Thomas J. White, also an appointed bar-panel attorney.

100 is on Friday."[3] After noting that his client in the trial scheduled for Thursday was not in custody and that Flowers did not believe that client would object to a continuance, Flowers indicated he would request a continuance in the noncustody case. The trial court then reviewed separate plea offers that had been proffered by the prosecution to Sutton and to Jackson but not yet accepted or rejected by either defendant, and thereafter directed that the case be transferred to department 100 for trial assignment on Friday, September 15, 2006, as "day 56 of 60." The court stated: "[A]ll parties are announcing ready for trial subject to the possibility that you [counsel Flowers] could be engaged in that other case, but you're going to make a motion." Flowers responded: "Exactly."

On Friday, September 15, 2006, day 56 of 60, the parties and counsel appeared in department 100. At that time, Flowers stated he was then engaged in trial in another case.[4] The court asked Flowers when that trial would be completed, and Flowers responded: "I would anticipate, it's more than likely the testimony will be done today in my other case." The court stated: "But you've got to do jury instructions and argument, so you're not going to finish until Monday or Tuesday?" Flowers responded: "Monday probably." When both defense counsel indicated that they wanted to bring the present case back for trial on Tuesday, September 19 (day 60 of 60), the court informed them, "I'm going to try to get a time waiver [from defendants] because I don't want . . . to go to [the] last day," and thereafter stated to defendant Jackson: "Your lawyer is engaged in trial right now, and he can only try one case at a time. But he will be available to try your case on the 19th of September. Is it agreeable with you that you come back here on September 19th and have your trial within two days of that date?" Jackson responded: "As long as no time is being waived." The court stated, "Oh, you don't want to waive time?" and Jackson responded: "No time. I don't want to waive time."

The court then stated: "That's fine. Then whether he's available or not, I'll have you back here on Monday and you guys can sit. You're coming back for nothing because he's engaged in trial. It doesn't require a time waiver, but I'm not the one who has to sit here. So that's fine, we'll bring you back on Monday, both of you, and you can sit." The court further observed: "[I]t seemed like a waste to bring them back. But if there's no time waiver, I have to bring them back every day." The court directed the parties and counsel to return on Monday, September 18, 2006, as day "59 of 60."

---

[3] Department 100 is the criminal master calendar court of the Los Angeles Superior Court, from which cases are assigned "for trial to any court throughout the county." (Super. Ct. L.A. County, Local Rules, rule 6.0(a) [see ch. 6, crim. div. procedures].)

[4] The record does not disclose the name of the other case in which attorney Flowers was engaged or on what date that other trial had begun.

On Monday, September 18, 2006, day 59 of 60, counsel for the People and for Sutton announced ready, but Flowers, Jackson's counsel, stated he still was engaged in trial. The court noted that it was "trailing this day to day" and that the trailing was "on motion of Mr. Flowers, correct?" Flowers responded, "Continuing motion that started last Friday." The court ordered the parties and counsel to return on Tuesday, September 19, at 8:30 a.m.

On Tuesday, September 19, 2006, day 60 of 60, Flowers informed the court that he still was engaged in trial. The court inquired, "When is it supposed to be over?" Flowers responded: "Probably tomorrow. We're dark today." The court noted on the record that neither defendant was waiving time, and ordered both defendants back to court the following morning. When Sutton asked the court when the 60-day period started to run, the court informed Sutton that "this is the 60th day. But if . . . the lawyer is engaged in trial, there's good cause to put the matter over for both defendants. Mr. Flowers is still engaged in trial. The court finds good cause. The matter is trailed. We'll have you back tomorrow."

On Wednesday, September 20, 2006, day 61 of 60, Flowers stated he still was engaged in trial. Nonetheless, Flowers stated that "I'm told I should make at least a pro forma motion to dismiss." The following colloquy ensued:

The Court: "On what basis?"

Mr. Flowers: "Because [d]ay 61 of 60 and—"

The Court: "But you're engaged in trial—"

Mr. Flowers: "And I'm still—"

The Court: "—You've asked for the continuance. Now, how can you make a motion to dismiss? Do you want to go to trial on this second case at the same time as your first? I don't care."

Mr. Flowers: "No."

The Court: "Well, how can you make a motion to dismiss if you've made the motion to continue?"

Mr. Flowers: "Because I'm still engaged in trial because I'm on day eight of a two-day trial."

The Court: "Well, so what?"

Mr. Flowers: "I just . . ."

The Court: "That's not a good faith motion to dismiss if you're making the motion to continue. You cannot make both."

The prosecutor stated that "The People have been ready, your honor, every day." The court acknowledged that was accurate.

The trial court then ruled: "Matter will trail. It will remain last day. All parties are ordered back on September 21st. The court finds good cause in that Mr. Flowers is engaged in trial. We'll see you guys tomorrow for trial."

On Thursday, September 21, 2006, day 62 of 60, Flowers arrived before the defendants were present and, stating he still was engaged in trial, asked the court whether, "if my jury goes out today, there is a high possibility they will, . . . am I considered available or do I have to wait for the verdict?" The court responded: "That's up to you. Technically there is a case that says while a jury is deliberating you're still engaged but I don't generally wait." Flowers asked: "If I call at 3:00 o'clock [and say] the jury is out[,] you will consider me available for tomorrow?" The court stated: "Tomorrow. Yes." When defendants Jackson and Sutton arrived, the court addressed them: "Mr. Flowers was here this morning. He is still engaged in trial. Mr. White was here, your lawyer [addressing Sutton], but you guys were on the way from Lancaster, Wayside. And Mr. White had a Norwalk appearance. He is ready for trial and waiting for Mr. Flowers who should be done today. So I anticipate that you will go to trial tomorrow. [¶] We will see you tomorrow. I find good cause, Mr. Flowers being engaged in trial, to trail this case until the 22nd of September. Mr. Flowers indicates he expects to have the jury out late this afternoon and even though he is technically engaged while the jury is deliberating, I will send you out to trial tomorrow." Defendant Sutton asked: "This doesn't make us waiving time?" The court responded: "You haven't waived one second. I find good cause because one of the two counsel [is] engaged in trial, which is good cause to trail the case."

On Friday, September 22, 2006, counsel Flowers appeared and stated that his other trial had not yet ended but that "[t]he prosecution rested yesterday afternoon. Jury instructions have already been gone through and approved. So final argument after that. They may go out this morning; if not that, then this afternoon." The court asked: "You'll be available then for trial Monday?," and Flowers answered: "Hopefully, yes." The court asked: "Is it your request the matter trail till Monday the 25th?," and Flowers stated: "Yes." The court stated: "Court finds good cause in that Mr. Flowers is engaged in trial and

will be available for trial on September 25. There's no time waiver. All parties are ordered back at 8:30 a.m. on that date." When Sutton again asked for an explanation of "what's the good cause," the court responded: "[T]he good cause is that one of the lawyers is engaged and can't try two cases at one time. And if one of the lawyers is engaged on a case with two defendants, it's good cause to put both over."

On Monday, September 25, 2006, Flowers informed the court that he had completed his other trial. The case then was transferred from department 100 to department 124 for trial. After the trial court in department 124 explained to defendants the plea offers that had been made to each, they both indicated they wanted to go to trial. Sutton's counsel then moved for dismissal on the ground that Sutton had been denied a speedy trial, relying upon a number of Court of Appeal decisions holding that the state's interest in conducting a joint trial did not constitute good cause to delay a codefendant's trial simply because delay was warranted with regard to a jointly charged defendant. The trial court denied the motion to dismiss, and the joint trial of both defendants commenced that same day.

At trial, each defendant was convicted of all offenses with which he was charged.

## C

In the Court of Appeal, defendants contended, among other issues, that the trial court erred under *Johnson, supra,* 26 Cal.3d 557, in finding that the unavailability of Jackson's counsel constituted good cause to delay Jackson's trial when Jackson expressly had refused to waive time and his counsel's unavailability related to counsel's representation of another client and was not for the benefit of Jackson. In addition, Sutton contended that even if the trial court properly found that the engagement of Jackson's counsel in another trial constituted good cause to delay Jackson's trial, the circumstance that Sutton was jointly charged with Jackson did not constitute good cause to delay Sutton's trial.

The Court of Appeal rejected both arguments. With respect to the first contention, the appellate court held that the circumstances presented in this case—"in which trial counsel is presently engaged in another matter and the matter before the court trails for a minimal number of days"—were distinguishable from the circumstances presented in *Johnson, supra,* 26 Cal.3d 557, in which the trial court, over the defendant's objection, had granted repeated delays not only to permit a public defender to complete an ongoing trial but also to accommodate the public defender's obligations with regard to numerous other older cases to which he had been assigned. With respect to the

second contention, the Court of Appeal held that the significant state interests served by permitting jointly charged defendants to be tried together in a single trial can constitute good cause to delay the trial of a jointly charged codefendant, and that the trial court did not abuse its discretion in finding that those interests justified the relatively brief delay in the joint trial at issue in the present case. The Court of Appeal affirmed the convictions of both defendants.

Each defendant petitioned for review, contending (among other unrelated issues) that the Court of Appeal's decision was inconsistent with *Johnson*, *supra*, 26 Cal.3d 557, and a number of Court of Appeal decisions following *Johnson*. We granted review, limiting the issues to be reviewed to those related to the statutory speedy-trial issue.[5]

## II

### A

As noted, section 1382 is one of the principal provisions implementing a criminal defendant's statutory right to a speedy trial. The statute provides that, in a felony case, the court shall dismiss the action when a defendant is not brought to trial within 60 days of his or her arraignment on an indictment or information, unless (1) the defendant enters a general waiver of the 60-day trial requirement, (2) the defendant requests or consents (expressly or impliedly) to the setting of a trial date beyond the 60-day period (in which case the defendant shall be brought to trial on the date set for trial or within 10 days thereafter), or (3) "good cause" is shown.[6]

---

[5] Our order granting review stated: "The issue to be briefed and argued is limited to the following: Were defendants' statutory speedy trial rights violated when defense counsel announced ready but that he might be in another trial, and the court continued trial for six days over defendants' personal objection, and if so, was the error prejudicial?"

As the foregoing statement of facts reveals, the phrasing of the question in our order granting review does not precisely reflect the circumstances disclosed by the record in this case, inasmuch as Jackson's counsel indicated up to the 60th day that he expected his other trial to be completed prior to the 60th day and the trial court continued the trial on a day-to-day basis for six days rather than simply "for six days." The briefs filed by the parties in this court, however, appropriately are based on the facts as reflected in the record, and fully discuss each aspect of the speedy-trial issue addressed in this opinion. Accordingly, we conclude there is no need to solicit supplemental briefing pursuant to Government Code section 68081.

[6] Section 1382, subdivision (a) provides in relevant part: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] . . . [¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information . . . . However, an action shall not be dismissed under this paragraph if either of the following circumstances exist: [¶] (A) The defendant enters a general waiver of the 60-day trial requirement. . . . [¶] (B) The defendant requests or

As reflected in the statement of facts set forth above, in this case each defendant repeatedly informed the trial court that he was not willing to "waive time," or, in other words, to consent to having his case brought to trial beyond the 60-day period; the trial court, in permitting the matter to trail beyond that period on a day-to-day basis, repeatedly acknowledged that defendants had not waived time and expressly rested its continuance orders on a determination that there was "good cause" for the delay. Our resolution of this case thus requires an analysis of the "good cause" concept embodied in section 1382.

Section 1382 does not define "good cause" as that term is used in the provision, but numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. (See, e.g., *Stroud v. Superior Court* (2000) 23 Cal.4th 952, 969–970 [98 Cal.Rptr.2d 677, 4 P.3d 933]; *People v. Szeto* (1981) 29 Cal.3d 20, 29–30 [171 Cal.Rptr. 652, 623 P.2d 213]; *Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, 271–275 [72 Cal.Rptr.3d 594].)[7] Past decisions further establish that in making its good-cause determination, a trial court must consider all of the relevant circumstances of the particular case, "applying principles of common sense to the totality of circumstances . . . ." (*Stroud, supra*, 23 Cal.4th 952, 969; see, e.g., *Jensen v. Superior Court, supra*, 160 Cal.App.4th 266, 270–275.) The cases recognize that, as a general matter, a trial court "has broad discretion to determine whether good cause exists to grant a continuance of the trial" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 [95 Cal.Rptr.2d 377, 997 P.2d 1044]), and that, in reviewing a trial court's good-cause determination, an appellate court applies an "abuse of discretion" standard. (*Ibid.*; see *People v. Shane* (2004) 115 Cal.App.4th 196,

---

consents to the setting of a trial date beyond the 60-day period. . . . Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter."

[7] When the prosecution fails to establish adequate justification for the delay, the circumstance that the delay is not likely to prejudice the defendant's ability to present a defense does not, in itself, constitute good cause to avoid a dismissal under section 1382. (See, e.g., *Sykes v. Superior Court* (1973) 9 Cal.3d 83, 88–89 [106 Cal.Rptr. 786; 507 P.2d 90] ["A dismissal is . . . mandated in those situations covered by the statute if, at the time a defendant moves therefor, the 60-day period has elapsed and good cause for the delay is not shown by the prosecution. In these circumstances the defendant is not required to make any further showing, and in particular he is not required to make an affirmative showing that he has been prejudiced by the delay."].) When the prosecution makes a prima facie showing of adequate justification for the delay, however, the circumstance that the delay is likely to prejudice the defendant's litigating position is a relevant factor in determining whether good cause for the delay has been extablished. (See, e.g., *Stroud v. Superior Court, supra*, 23 Cal.4th 952, 971.)

200–203 [8 Cal.Rptr.3d 753]; *Hollis v. Superior Court* (1985) 165 Cal.App.3d 642, 645 [211 Cal.Rptr. 649].)[8]

■ Past California decisions have examined a wide variety of circumstances that have been proffered or relied upon as a basis under section 1382 for finding good cause to delay a trial, including (1) the unavailability of a witness, (2) the unavailability of a judge, (3) the unavailability of a courtroom, (4) counsel's need for additional time to prepare for trial, (5) the unavailability of counsel, and (6) the interest in trying jointly charged defendants in a single trial. (See generally 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) §§ 308–316, pp. 457–471, and cases cited; Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2009) §§ 19.27–19.29, pp. 529–532, and cases cited.)

As briefly noted above, defendants' challenges to the trial court's actions in the present case raise two distinct questions relating to good cause: (1) whether the trial court acted within its discretion in determining that the circumstance that Jackson's appointed counsel currently was engaged in an ongoing trial in another case constituted good cause to delay Jackson's trial pending completion of counsel's other trial, and (2) if so, whether the trial court acted within its discretion in determining that this circumstance also provided good cause to delay the trial of Sutton, a jointly charged codefendant. We turn first to the trial court's good-cause determination as it relates to the delay of Jackson's trial.

**B**

In asserting that the Court of Appeal erred in failing to find that the trial court abused its discretion in determining that Jackson's counsel's continuing engagement in an ongoing trial constituted good cause to delay Jackson's trial, both defendants rely principally upon this court's decision in *Johnson*, *supra*, 26 Cal.3d 557. Because of the centrality of the *Johnson* decision to defendants' claim, we begin by reviewing that decision in some detail.

---

[8] A trial court's broad discretion in determining whether good cause has been shown for a delay of a scheduled trial is just one of the numerous instances in which a trial court enjoys broad discretion over the management of the cases pending before it and in determining a fair and reasonable manner to accommodate the various and sometimes competing interests that frequently are present in cases involving multiple defendants. (See, e.g., §§ 1048 [authority to direct that an action be tried out of the statutorily designated order of calendar preference], 1094 [authority to depart from the statutorily designated order of trial procedure], 1270 [authority to release defendant on own recognizance], 1385 [authority to dismiss a criminal action in furtherance of justice].)

## 1

In *Johnson, supra*, 26 Cal.3d 557, the defendant, represented by a deputy public defender, was arraigned on February 2, 1977, on robbery charges and trial originally was set for March 23, 1977. On that date, the defendant appeared in court with counsel. Counsel explained to the court that he was presently engaged in another trial, had two other trials already scheduled in cases that were older than Johnson's case, and had no available trial date until May 6, 1977. (See 26 Cal.3d at pp. 563–564 & fn. 2.) The trial court viewed counsel's explanation as an implied request for a continuance beyond the 60-day period set forth in section 1382.[9] Although the defendant, who was unable to make bail and thus remained incarcerated pending trial (*Johnson, supra*, 26 Cal.3d at p. 565), refused to consent to the proposed continuance, the trial court found good cause to continue the matter and postponed trial until May 6, 1977.

On that date, Johnson's counsel again requested a continuance, explaining that he then had three other trials to complete prior to trying Johnson's case and did not expect to be available for that case until June 14, 1977. (See *Johnson, supra*, 26 Cal.3d at p. 564 & fn. 3.) The defendant again refused to consent to a continuance of his trial, but the trial court found good cause to continue the trial to June 14, " 'which it appears to the court is the earliest opportunity counsel has to try [the] matter.' " (*Id.* at p. 564, fn. 3.)

On that date, the court excused counsel until June 23, 1977, and at the same time entered a minute order indicating that " 'due to congested calendar' " the court was trailing the case to a date " 'not later than June 27, 1977, or to such earlier date as a trial court is available (deemed 10th day, pursuant to stipulation).' " (*Johnson, supra*, 26 Cal.3d at p. 565.)

Finally, on June 27, 1977, 144 days after the information had been filed, the court called the case for trial and jury selection began. (*Johnson, supra*, 26 Cal.3d at p. 565.)

In addressing the propriety of the trial court's actions, the majority opinion in *Johnson* first considered whether, under the circumstances of that case,

---

[9] Under the provisions of section 1382 as they read at the time of the trial proceedings in *Johnson*, the statute's 60-day period ran from the filing of the information or the finding of the indictment, rather than from the date of the arraignment (as is now the case). (See Stats. 1973, ch. 847, § 1, pp. 1513–1514.) Although the *Johnson* decision does not explicitly state on which date the information was filed, the opinion states that the case ultimately was brought to trial on June 27, 1977, "144 days after the information was filed against him." (*Johnson, supra*, 26 Cal.3d at p. 565.) Counting back from June 27, 1977, it appears that the information was filed on or about February 2, 1977, the same day the defendant was arraigned on the information. Accordingly, the 60-day period would have ended in early April 1977.

defense counsel had the right over the defendant's objection to waive the defendant's statutory right to be brought to trial within 60 days. In *Townsend v. Superior Court* (1975) 15 Cal.3d 774, 779–784 [126 Cal.Rptr. 251, 543 P.2d 619], this court had held that defense counsel's general authority to control the defendant's participation in judicial proceedings authorized counsel to consent to a continuance of the trial beyond the 60-day period, even over the defendant's objection. But in *Johnson*, the court qualified the holding in *Townsend*, stating: "The power of appointed counsel to control judicial strategy and to waive nonfundamental rights despite his client's objection (see *Townsend* v. *Superior Court*[, *supra*,] 15 Cal.3d 774, 781 . . . and cases there cited) presumes effective counsel acting for the best interest of the client. As the court pointed out in *People* v. *Corona* (1978) 80 Cal.App.3d 684, 720 [145 Cal.Rptr. 894], '[e]ffectiveness . . . is not a matter of professional competence alone. It also includes the requirement that the services of the attorney be devoted solely to the interest of his client undiminished by conflicting considerations.' Thus when the public defender, burdened by the conflicting rights of clients entitled to a speedy trial, seeks to waive one client's right, that conduct cannot be justified on the basis of counsel's right to control judicial proceedings. The public defender's decision under these circumstances is not a matter of defense strategy at all; it is an attempt to resolve a conflict of interest by preferring one client over another. As a matter of principle, such a decision requires the approval of the disfavored client. [Citation.] We conclude that the consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and not to promote the best interests of [the] client, cannot stand unless supported by the express or implied consent of the client himself." (*Johnson, supra,* 26 Cal.3d at pp. 566–567, fn. omitted.)

Having concluded that the delay of the trial in that case could not be upheld on the basis of defense counsel's consent, the court in *Johnson, supra,* 26 Cal.3d 557, turned to the question whether, under the circumstances of that case, the trial court properly could find good cause existed to support the numerous continuances of the trial beyond the 60-day period. In addressing the good-cause issue, the court in *Johnson* recognized that "[w]hat constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court." (*Id.* at p. 570.) The court in *Johnson* then reviewed a variety of circumstances determined by past decisions either to constitute or not constitute good cause under section 1382, observing: "The courts agree, for example, that delay caused by the conduct of the defendant constitutes good cause to deny his motion to dismiss. Delay for defendant's benefit also constitutes good cause. Finally, delay arising from unforeseen circumstances, such as the unexpected illness or unavailability of counsel or witnesses constitutes good cause to avoid dismissal. Delay attributable to the

fault of the prosecution, on the other hand, does not constitute good cause. Neither does delay caused by improper court administration." (26 Cal.3d at p. 570, fns. omitted.)

The court in *Johnson* then stated: "Although we perceive no objection to the principles stated in the preceding paragraph, we question those decisions which assume that court congestion or excessive public defender caseloads necessarily constitute good cause to deny dismissal. (See, e.g., *In re Lopez* [(1952)] 39 Cal.2d 118, 120 [245 P.2d 1] (court congestion); *People* v. *Weiss* (1958) 50 Cal.2d 535, 559 [327 P.2d 527] (same); *People* v. *Yniquez* (1974) 42 Cal.App.3d Supp. 13, 19 [116 Cal.Rptr. 626] (same); *People* v. *Superior Court* (*Lerma*) [(1975)] 48 Cal.App.3d 1003, 1009–1010 [122 Cal.Rptr. 267] . . . (unavailability of public defender).)" (*Johnson, supra*, 26 Cal.3d at pp. 570–571.) The court explained: "A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. The right may also be denied by failure to provide enough public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel. '[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.' [Citation.]" (*Id.* at p. 571.)

The *Johnson* opinion quoted from a discussion of the problem of delay caused by court congestion, contained in the American Bar Association's standards for speedy trial: " '[D]elay arising out of the chronic congestion of the trial docket should not be excused . . . . [¶] But, while delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when "attributable to exceptional circumstances." Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition.' " (*Johnson, supra*, 26 Cal.3d at p. 571, quoting ABA Project on Stds. for Crim. Justice, Stds. Relating to Speedy Trial (Approved Draft 1968) pp. 27–28 (ABA Stds. Relating to Speedy Trial).)

The court in *Johnson* continued: "The same reasoning, distinguishing between chronic conditions and exceptional circumstances, applies to the delay caused by the crowded calendars of public defenders. The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their

cases. On the other hand, routine assignment of heavy caseloads to under-staffed offices, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided. A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant." (*Johnson, supra,* 26 Cal.3d at p. 572.)

Turning to the facts before it, the court in *Johnson* stated: "In the present case the record does not indicate any ground for the postponements of March 23 and May 6 which would suggest good cause to deny defendant's motion to dismiss. When the public defender moved for a continuance on March 23, he clearly posited his request not upon a benefit to Johnson but upon commit-ment to clients other than Johnson. He revealed that his representation of other clients created a conflict which he proposed to resolve to Johnson's detriment. Under these circumstances we think the court should inquire whether the assigned deputy could be replaced by another deputy or ap-pointed counsel who would be able to bring the case to trial within the statutory period. In some instances, appointment of new counsel will serve to protect defendant's right to a speedy trial. If, on the other hand, the court cannot ascertain a feasible method to protect defendant's right, the court will have no alternative but to grant a continuance; upon a subsequent motion to dismiss, however, the court must inquire into whether the delay is attributable to the fault or neglect of the state; if the court so finds, the court must dismiss." (*Johnson, supra,* 26 Cal.3d at pp. 572–573.)

Because the circumstances revealed by the record in *Johnson* did not demonstrate good cause for delay, the court concluded that the trial court had erred under section 1382 in failing to dismiss the proceeding. (*Johnson, supra,* 26 Cal.3d at pp. 573–574.) Nonetheless, the court in *Johnson* went on to hold that the defendant in that case was not entitled to relief, explaining that (1) because the defendant had raised the issue on appeal from a subsequent conviction (rather than pretrial), he was required to demonstrate prejudice (see *People v. Wilson* (1963) 60 Cal.2d 139, 151–152 [32 Cal.Rptr. 44, 383 P.2d 452]), and (2) the defendant had failed to demonstrate prejudice, because the charges against him could have been refiled had the trial court granted the motion to dismiss. (*Johnson,* at pp. 574–575.)

**2**

In contending that the Court of Appeal in the present case erred in finding that the trial court's determination of good cause was consistent with this court's decision in *Johnson, supra,* 26 Cal.3d 557, both defendants rely in

part on an introductory passage contained in the opinion, in which the court purported to "summarize briefly" its conclusions regarding the speedy-trial issue. (*Id.* at p. 561.) In summarizing the court's holding on the issue of good cause, this passage states: "[W]e conclude that, at least in the case of an incarcerated defendant, the asserted inability of the public defender to try such a defendant's case within the statutory period because of conflicting obligations to other clients does not constitute good cause to avoid dismissal of the charges." (*Id.* at p. 562.) Because in the present case the inability of Jackson's counsel to try Jackson's case within the 60-day period was based upon Jackson's counsel's obligation to another client (whose trial the attorney was then engaged in), defendants maintain that, under *Johnson,* counsel's engagement in that other trial could not constitute good cause to delay Jackson's trial, even for the limited period involved in the present case.

Although this introductory passage from *Johnson, supra,* 26 Cal.3d 557, relied upon by defendants—viewed in isolation—reasonably can be read as supporting defendants' claim, when we consider the opinion in *Johnson* in its entirety it is evident that the language in that passage is imprecise and overstates the decision's actual *holding* on the good-cause issue. As the foregoing review of the opinion in *Johnson* reveals, the focus of the court's concern in *Johnson* with respect to the good-cause issue involved the impropriety of justifying a delay in trial upon appointed counsel's inability or unavailability to try the case when it is *the state* that realistically bears responsibility for counsel's unavailability because of *its chronic* failure to provide a number of public defenders or appointed counsel sufficient to enable indigent defendants to come to trial within the prescribed statutory period. (See 26 Cal.3d at p. 571 ["A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. The right may also be denied by failure to provide enough public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel."]; *id.* at p. 573 [in considering a motion to dismiss after the court has granted a continuance beyond the statutory period because of counsel's unavailability due to his or her commitment to other clients, "the court must inquire into whether the delay is attributable *to the fault or neglect of the state*; if the court so finds, the court must dismiss" (italics added)]; see also *Barsamyan v. Appellate Division of Superior Court* (2008) 44 Cal.4th 960, 981 [81 Cal.Rptr.3d 265, 189 P.3d 271] [describing good-cause holding in *Johnson*].)

█ As demonstrated by the circumstances of the present case, there are some (indeed, undoubtedly many) instances in which an appointed counsel's unavailability to try one client's case on a particular date because of a calendar conflict arising from counsel's obligations to another client cannot fairly be attributed to the fault or neglect of the state. Here, Jackson's counsel

was unavailable on the 60th day after Jackson's arraignment because another trial in which counsel was engaged ran longer than anticipated. It is often difficult to predict how long a trial will take, and unexpected events that prolong another trial in which appointed counsel is engaged cannot fairly or reasonably be laid at the feet of the state. This type of calendar conflict, although arising from appointed counsel's obligation to another client, clearly is distinguishable from the circumstances that were before the court in *Johnson, supra*, 26 Cal.3d 557.

Defendants contend, however, that in view of the number of cases in which Jackson's counsel acknowledged he was involved when this matter was called for trial on Tuesday, September 12, 2006 (day 53 of 60) (see, *ante*, at pp. 540–541), it was reasonably foreseeable that counsel *might* be engaged in another trial on the 60th day, and that the state should bear responsibility for failing to take some ameliorative action at that point. Although the record in this case does indicate that Jackson's counsel had a full caseload during the time period in question, in a contemporary urban criminal court system in which a substantial proportion of criminal charges are disposed of without a trial, by plea negotiations that often occur close in time to a scheduled trial date, the commitments of Jackson's counsel do not amount to a systemic flaw, like the one involved in *Johnson*, that is fundamentally incompatible with the 60-day rule.

As the record indicates, on Friday, September 15, 2006 (day 56 of 60), Jackson's counsel informed the court that although he was then engaged in another trial, he expected the other trial probably would be completed on Monday, September 18 (day 59 of 60). Thus, at that time, the trial court reasonably could anticipate that Jackson's counsel would be available for trial of the current matter within the 60-day period. On Monday, September 18, it still appeared that counsel's other trial might well be completed in time to commence trial in the present proceeding within the 60-day period. It was not until Tuesday, September 19 (day 60 of 60), that it became clear that counsel would be engaged in the other trial beyond the 60-day period because that trial was continuing to take longer to complete than anticipated. (The following day, Jackson's counsel stated that he was on "day eight of a two-day trial.") From September 19 forward, the trial court continued to trail this matter on a day-to-day basis to minimize the delay in the start of the trial in the present case. The other trial in which Jackson's counsel was engaged concluded by the end of that week, and trial in the present case commenced the following Monday, the 66th day after defendants' arraignment. Under these circumstances, we conclude that the delay in the commencement of defendants' trial cannot reasonably be attributed to the fault or neglect of the state.

Indeed, as the record of the trial proceedings in this case clearly indicates, the general policies and practices followed by the Los Angeles Superior Court in this case relating to the commencement of trial differed markedly from the general trial court policies and practices that led to this court's decision in *Johnson*, *supra*, 26 Cal.3d 557. As we have seen, in *Johnson* the trial court followed a practice of routinely finding good cause to continue a trial date beyond the 60-day period, over a defendant's objection, solely to accommodate the public defender's chronic heavy backload of cases. No effort was made to establish a schedule that would facilitate meeting the 60-day deadline; instead, early in the process, the trial court set a trial date beyond the 60-day period because counsel was assigned to a number of older cases, and thereafter the court granted another lengthy continuance to further accommodate counsel's increasing backload of other cases.

By contrast, the policies and practices followed by the trial court in the present case clearly were designed to respect and implement the 60-day rule. In setting an initial trial date, the court assigned a date that afforded the court and counsel an opportunity to coordinate schedules so as to meet the 60-day deadline. As the 60-day deadline approached, the criminal master calendar judge met with counsel and the parties daily, in an effort to ensure that the trial would not be unduly delayed. When on the 60th day Jackson's counsel informed the court that, contrary to counsel's prior expectation, he still was engaged in his other trial, the court trailed this case on a day-to-day basis, to ensure that the delay would be as minimal as possible. Finally, as soon as counsel's other trial was completed, the trial of the present matter commenced. Unlike the situation in *Johnson*, the cause of the instant delay—an unanticipated extended duration of another trial in which a defendant's appointed counsel was engaged—was the type of contingency that may occur even in a reasonably funded and efficiently administered trial court system that handles a large volume of criminal cases. The state cannot fairly or reasonably be held responsible for all such contingencies that may occur.

█ Defendants contend, however, that under *Johnson*, *supra*, 26 Cal.3d 557, the unavailability of counsel resulting from an appointed counsel's commitment to another client can justify a finding of good cause only in "exceptional circumstances," and that the unavailability of Jackson's counsel because of his continued engagement in another trial cannot be viewed as "exceptional." This argument is based upon a misreading of the pertinent passage in *Johnson* referring to "exceptional circumstances." Although the court in *Johnson* explained that it was appropriate to distinguish between "chronic conditions" and "exceptional circumstances" in determining whether the delay caused by the "crowded calendars of public defenders" would support a finding of good cause (*id.* at p. 572)—thus recognizing that unusual circumstances such as a large-scale riot or other mass public disorder might result in an inordinate number of cases that would overwhelm even a

reasonably staffed public defender's office and justify a reasonable delay in trial to deal with the exceptional volume of cases[10]—the passage in *Johnson* in question did not purport to exclude *other* circumstances, such as the "unexpected illness or unavailability of counsel" (26 Cal.3d at p. 570), for which the state properly could not be held responsible and that would support a finding of good cause under section 1382. The reference in *Johnson* to "exceptional circumstances" simply acknowledges that even when a delay *is* attributable to the state's failure to provide sufficient resources to bring *all* cases to trial within the statutory period, there can be instances in which a trial court properly may find good cause for the delay under section 1382. Where, as here, the unavailability of counsel was not fairly attributable to the state's fault or neglect, the circumstance that the unavailability of Jackson's counsel was not caused by an "exceptional circumstance" did not preclude the trial court from determining that counsel's unavailability constituted good cause under section 1382 to delay the trial.

 Defendants further contend the trial court's determination of good cause was flawed because the court, in making that determination, failed to follow the procedural steps set out in *Johnson*, *supra*, 26 Cal.3d 557. As discussed above, the court in *Johnson* indicated that when appointed counsel seeks a continuance beyond the 60-day period because of a commitment to another client, "the court should inquire whether the assigned [counsel] could be replaced by another . . . appointed counsel who would be able to bring the case to trial within the statutory period. . . . If . . . the court cannot ascertain a feasible method to protect defendant's right, the court will have no alternative but to grant a continuance; upon a subsequent motion to dismiss, however, the court must inquire into whether the delay is attributable to the fault or neglect of the state; if the court so finds, the court must dismiss." (*Id.* at pp. 572–573.) Defendants fault the trial court in this case for failing to inquire on Friday, September 15, 2006 (day 56 of 60), whether Jackson's counsel could be replaced by another counsel who could bring the case to trial within the 60-day period, and further for failing, on Wednesday, September 20 (day 61 of 60), when Jackson's counsel made his "pro forma motion

---

[10] As discussed above (see, *ante*, at p. 550), the distinction drawn by the court in *Johnson* between delay caused by "chronic conditions" and delay attributable to "exceptional circumstances" was based on a similar distinction drawn in the American Bar Association's report on standards for speedy trial in discussing trial delay caused by court congestion. (ABA Stds. Relating to Speedy Trial, *supra*, pp. 27–28, quoted in *Johnson*, *supra*, 26 Cal.3d at p. 571.) In providing examples of the type of "unique, nonrecurring events" that would constitute "exceptional circumstances," the American Bar Association's report stated: "Thus, when a large-scale riot or other mass public disorder has occurred, some leeway for additional time is required to ensure that the many resulting cases may receive adequate attention from the prosecutor's office, defense counsel (possibly a single defender office), and the judiciary." (ABA Stds. Relating to Speedy Trial, *supra*, at p. 28.)

to dismiss," to require the prosecution to establish that the delay was not attributable to the fault or neglect of the state.

■ We find no merit in defendants' procedural objections. On Friday, September 15, Jackson's counsel told the court that his other trial probably would be completed on Monday, September 18 (day 59 of 60); thus there was no reason for the court to inquire at that time whether replacement counsel should be considered. As we have seen, it was not until Tuesday, September 19 (day 60 of 60) that counsel informed the court that, contrary to counsel's previous expectation, he still was engaged in the other trial. Because Jackson's counsel indicated that he expected the trial to be completed very shortly, and continued to express a similar expectation on succeeding days, the trial court was not required to make any specific inquiry in order to conclude reasonably that the appointment of new counsel for Jackson only would lengthen, rather than shorten, the delay in bringing Jackson's case to trial. Finally, on September 21, when Jackson's counsel proffered his "pro forma motion to dismiss," the trial court was already fully aware from statements on the record that the delay was attributable to the unexpected length of the other trial in which Jackson's counsel continued to be engaged, and there was no need to request the prosecution to present evidence regarding whether the delay was attributable to the fault or neglect of the state. The prosecution had announced its readiness for trial at all relevant times, and it was evident that the delay at issue was not attributable to the fault or neglect of the state. Contrary to defendants' contention, our decision in *Johnson, supra,* 26 Cal.3d 557, cannot properly be interpreted to require a trial court, on its own initiative, to conduct an evidentiary hearing or inquiry under such circumstances before finding good cause for the delay.[11]

For all of the foregoing reasons, we reject defendants' contention that under *Johnson, supra,* 26 Cal.3d 557, the continued engagement of Jackson's counsel in another client's trial could not constitute a legitimate justification for continuing Jackson's trial beyond the 60-day period so as to support a determination of good cause under section 1382.[12]

---

[11] Although the trial court properly denied the motion for dismissal made by Jackson's counsel on September 20, we disagree with the trial court's comment that the motion was "not a good faith motion." The motion was an appropriate means of preserving Jackson's rights by timely raising the question of the propriety of granting a continuance of the trial without Jackson's consent based upon his counsel's engagement in another client's trial.

[12] In addition to their reliance upon *Johnson, supra,* 26 Cal.3d 557, defendants contend that the trial court's good-cause determination conflicts with the Court of Appeal's decision in *People v. Escarcega* (1986) 186 Cal.App.3d 379 [230 Cal.Rptr. 638] (*Escarcega*).

In *Escarcega, supra,* 186 Cal.App.3d 379, the defendant, who had been in custody since April 5, 1983, awaiting trial, had agreed to a continuance of trial until October 31, 1983, at the request of his appointed counsel (Attorney Part), but thereafter refused to agree to any further continuance. On November 1, 1983, Part informed the court that he was not ready for trial in

■ As explained above, a good-cause determination under section 1382 involves an assessment of a number of factors: (1) the legitimacy and strength of the justification for the delay, (2) the duration of the delay, and (3) the likelihood or probability that the delay will prejudice or adversely affect any party. Having found that the engagement of Jackson's counsel in another trial constituted a legitimate ground to delay Jackson's trial, we conclude that in light of the very brief duration of the delay in the commencement of the trial and the absence of any indication that the delay adversely affected defendants' ability to defend themselves against the charges, the Court of Appeal properly found that the trial court did not abuse its discretion in finding good cause existed to deny Jackson's motion to dismiss the proceeding under section 1382.[13]

---

Escarcega's case because he was in the fifth day of trial in another case (the Lawrence case) and stated that he would be ready to try Escarcega's case by November 15 "at the latest." The trial court, observing that, if it relieved Part, new counsel would need about two months to prepare for trial, found good cause to continue the trial to November 14. On November 14, Part informed the court he still was engaged in the Lawrence trial but would be finished with that trial by November 28. The trial court found good cause to continue the Escarcega trial to November 28. On November 28, Part appeared and announced he was ready for trial, but at that time the defendant asked to substitute privately retained counsel. The trial court permitted the substitution of new counsel, and the defendant in *Escarcega* ultimately was convicted at the subsequent trial. On appeal, defendant challenged the trial court's determination that there was good cause to delay the trial in *Escarcega* on the basis of Attorney Part's engagement in another trial.

The Court of Appeal in *Escarcega, supra,* 186 Cal.App.3d 379, agreed with the defendant's claim, holding that "there was no justification for the delay from November 10 to November 28, 1983, about two and one-half weeks. The sole reason for such delay was the congested calendar of Part, defendant's appointed counsel. In the absence of 'extraordinary circumstances' such explanation for delay cannot constitute a sufficient excuse." (*Id.* at p. 386.)

The particular circumstances of *Escarcega, supra,* 186 Cal.App.3d 379, may provide some basis for questioning the trial court's good-cause determination in that case, inasmuch as (1) the defendant had been incarcerated prior to trial for almost six months, (2) his appointed counsel apparently began a lengthy trial for another client shortly before the scheduled October 31 trial date without consulting the defendant to determine whether the defendant would consent to an additional continuance, and (3) the trial court did not inquire whether defense counsel could either transfer the Lawrence trial to another attorney or alternatively prepare another attorney to try the Escarcega case within the 10-day period following the date to which the defendant had consented. (Cf. *Batey v. Superior Court* (1977) 71 Cal.App.3d 952, 957–958 [139 Cal.Rptr. 689].) Nonetheless, to the extent that the Court of Appeal's decision in *People v. Escarcega, supra,* 186 Cal.App.3d 379, suggests appointed counsel's engagement in another trial never can constitute good cause under section 1382, that decision is disapproved. As explained above, when an appointed counsel's unavailability is not fairly attributable to the fault or neglect of the state, his or her continuing engagement in another client's trial may constitute good cause for a reasonable delay of trial.

[13] As noted above (see, *ante,* at p. 538), the Attorney General, in addition to contending (as we have concluded) that the trial court's finding of good cause is not inconsistent with the decision in *Johnson, supra,* 26 Cal.3d 557, also urges this court to reconsider our holding in that case that a public defender or appointed counsel lacks the authority to waive a client's statutory right to a speedy trial over the objection of the client when the attorney's action is not

## C

Defendant Sutton contends that even if the continued engagement of Jackson's counsel in another trial constituted good cause to continue Jackson's trial, the trial court erred in determining that there was good cause to continue Sutton's trial date beyond the 60-day period, inasmuch as Sutton's counsel was ready and available to go to trial within the 60-day period. The Court of Appeal rejected this argument, concluding that because the proceedings against Jackson and Sutton properly had been joined, the state interests that would be served by conducting a single joint trial supported the trial court's determination that good cause existed to delay Sutton's trial. For the reasons discussed below, we agree with the conclusion reached by the Court of Appeal.

Section 1050.1—an initiative statute enacted in 1990 as part of Proposition 115—provides in full: "In any case in which two or more defendants are jointly charged in the same complaint, indictment, or information, and the court or magistrate, for good cause shown, continues the arraignment, preliminary hearing, or trial of one or more defendants, the continuance shall, upon motion of the prosecuting attorney, constitute good cause to continue the remaining defendants' cases so as to maintain joinder. The court or magistrate shall not cause jointly charged cases to be severed due to the unavailability or unpreparedness of one or more defendants unless it appears to the court or magistrate that it will be impossible for all defendants to be available and prepared within a reasonable period of time."

■ Thus, when, as here, two defendants are jointly charged in an information and the trial court continues the trial as to one of the defendants for good cause, section 1050.1 provides that the continuance of the trial as to that defendant constitutes good cause to continue the trial "a reasonable period of time" as to the other defendant in order to permit the defendants to be tried jointly.

---

for the client's benefit but to fulfill a conflicting obligation to another client who also has a comparable right to a speedy trial. In briefing this point, however, the Attorney General acknowledges that the state's chronic failure to provide a sufficient number of public defenders or appointed counsel potentially poses a serious systemic problem to the speedy-trial rights of persons facing criminal charges, and suggests that the solution is to permit a trial court to consider all the circumstances of each case on a case-by-case basis, in order to enable the court to identify those instances in which the delay properly is attributable to the fault or neglect of the state. A trial court's undertaking of such case-by-case oversight, however, can best be effectuated—as demonstrated in the present case—through a trial court's exercise of the discretion afforded by section 1382's good-cause standard, rather than by a modification of the holding in *Johnson* regarding the scope of an appointed counsel's unilateral authority to waive a client's statutory speedy-trial rights over the client's objection.

Defendant Sutton—relying upon the language of section 1050.1 "upon motion of the prosecuting attorney"—argues the statute does not apply in this case, because the prosecutor never explicitly moved to continue Sutton's trial. In our view, however, the language of section 1050.1 in question was not intended, and reasonably cannot be interpreted, to require an explicit motion by the prosecutor seeking such a continuance as a necessary prerequisite to a trial court's finding of good cause to continue a codefendant's trial in order to permit a joint trial. The statute does not purport to preclude a trial court from finding that the state interest in a joint trial constitutes good cause for a continuance in the absence of such a motion by the prosecuting attorney, and the evident legislative intent underlying the statute—to facilitate joint trials and to minimize the instances in which a severance is required—is consistent with a trial court's authority to make such a good cause determination on its own. Indeed, because under section 1382 the determination whether good cause is shown to justify the delay of a trial constitutes a judicial (rather than an executive) function, a significant separation-of-powers question would be presented were the statute to be interpreted to condition a trial court's determination of good cause upon the approval or concurrence of the prosecuting attorney. (Cf., e.g., *People v. Tenorio* (1970) 3 Cal.3d 89, 94 [89 Cal.Rptr. 249, 473 P.2d 993]; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509–517 [53 Cal.Rptr.2d 789, 917 P.2d 628].) Accordingly, the familiar jurisprudential principle that statutes should be interpreted, if reasonably possible, to avoid constitutional questions (see, e.g., *Miller v. Municipal Court* (1943) 22 Cal.2d 818, 828 [142 P.2d 297]) supports a reading of section 1050.1 that does not condition the validity of a trial court's determination of good cause under the statute upon the prosecutor's motion for a continuance.

Furthermore, long before the enactment of section 1050.1 in 1990, California decisions had recognized that a trial court properly may find that the significant state interests that are furthered by conducting a single trial of jointly charged criminal defendants constitute good cause to continue a codefendant's trial beyond the presumptive statutory period designated in section 1382. More than 40 years ago, in *People v. Teale* (1965) 63 Cal.2d 178 [45 Cal.Rptr. 729, 404 P.2d 209], this court rejected a contention that the trial court had violated the defendant's statutory speedy-trial rights under section 1382 in continuing one defendant's trial date beyond the statutory period in order to permit a single joint trial with a codefendant whose trial date properly had been continued. The court in *Teale* concisely explained that "[w]here a continuance is granted upon good cause to a codefendant the rights of the other defendants are generally not deemed to have been prejudiced." (*Teale, supra,* 63 Cal.2d at p. 186, citing *Ferenz v. Superior Court* (1942) 53 Cal.App.2d 639 [128 P.2d 48] and *People v. McFarland* (1962) 209 Cal.App.2d 772 [26 Cal.Rptr. 596]; see also *People v. Clark* (1965) 62 Cal.2d

870, 882–883 [44 Cal.Rptr. 784, 402 P.2d 856].)[14] And although past California decisions have held that a *lengthy* continuance of an objecting codefendant's trial to facilitate a joint trial is permissible only in instances in which the state interest in avoiding multiple trials is especially compelling—as when the trials are likely to be long and complex and impose considerable burdens on numerous witnesses (see, e.g., *Greenberger v. Superior Court* (1990) 219 Cal.App.3d 487, 501–506 [267 Cal.Rptr. 849] [upholding six-month continuance of a complex murder trial involving numerous witnesses, where trial court found counsel for codefendants needed substantial time to prepare adequately for trial])—when the proposed delay to permit a single joint trial is relatively brief, the substantial state interests that are served in every instance by proceeding in a single joint trial generally will support a finding of good cause to continue the codefendant's trial under section 1382, even when there is no indication that, were the defendants' trials to be severed, the separate trials would be unusually long or complex. (See, e.g., *People v. McFarland, supra*, 209 Cal.App.2d 772, 776–778; see also § 1050.1.)[15]

In contending that the state interests served by a joint trial cannot properly support a finding of good cause to delay a codefendant's trial for even a relatively short period of time beyond the presumptive statutory deadline, defendants rely upon the Court of Appeal's decision in *Sanchez v. Superior Court* (1982) 131 Cal.App.3d 884 [182 Cal.Rptr. 703] (*Sanchez*), but that case is clearly distinguishable from the present case. In *Sanchez*, one of

[14] In *People v. Clark, supra*, 62 Cal.2d 870, although recognizing that the state interest in trying jointly charged defendants in a single trial may support a finding of good cause to continue a trial beyond the period designated in section 1382, this court cautioned that it would constitute an abuse of discretion to grant such a delay "if it can be shown that the insistence on joint trial was not in good faith, or that it was solely for the purpose of obtaining an otherwise illegal delay, to take unfair advantage of the defendants, or was not reasonably predicated upon the purpose and intent of the statute which grants the right to try the defendants jointly." (62 Cal.2d at p. 883.) In the present case, there is no suggestion that any such improper motivation underlay the decision to jointly charge Sutton and Jackson or to seek a single trial.

[15] In *People v. Soper* (2009) 45 Cal.4th 759, 772 [89 Cal.Rptr.3d 188, 200 P.3d 816], we recently listed a number of the advantages achieved by a joint trial, explaining that such a trial " 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' [Citation.] 'A unitary trial requires a single courtroom, judge, and court attach[és]. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.' [Citations.]" Although *Soper* involved a joint trial of multiple charges against a single defendant, the advantages referred to in that case accrue as well in the case of a joint trial of multiple defendants.

Further, in addition to the advantages set forth in *Soper*, a joint trial of multiple defendants charged with the same or related offenses avoids the often significant increased burden on crime victims and witnesses that would be imposed by multiple trials.

the jointly charged defendants was in custody pending trial and another codefendant was at liberty on bail. On the date initially set for trial, the public defender who represented the noncustody codefendant advised the court that he (the attorney) was then engaged in another trial, that he had two other "must-go" criminal trials immediately after, and that he would not be available to try the *Sanchez* matter until seven days beyond the 60-day period. Counsel then moved for a continuance to that date beyond the 60-day period, and his client, free on bail, consented to that continuance. (*Id.* at p. 887.) The trial court continued the trial to the requested date. The incarcerated codefendant, however, objected to a continuance of his trial beyond the statutory period, contending that this court's decision in *Johnson*, *supra*, 26 Cal.3d 557 stood for the proposition that "an in-custody defendant's trial may not be so delayed [beyond the 60-day period] to accommodate the overcrowded case load of appointed counsel." (*Sanchez*, *supra*, 131 Cal.App.3d at pp. 887–888.) The trial court rejected the argument of the in-custody defendant, ruling that *Johnson* was inapplicable to multiple defendants jointly charged with the same offense.

On appeal, the Court of Appeal reversed the trial court's decision, concluding that "[t]he rule stated in *Johnson* is equally applicable to the present underlying prosecution where delay beyond the statutory period is caused by the unavailability of appointed counsel for a codefendant rather than petitioner's own appointed counsel. The cause of the delay is the same: failure of the state to provide the facilities and personnel needed to implement the right to speedy trial. The result is identical: the right of an in-custody defendant demanding a speedy trial is subordinated to the convenience of appointed counsel and the criminal justice system as he remains confined beyond the time prescribed until the system will accommodate him." (*Sanchez*, *supra*, 131 Cal.App.3d at p. 890.)

Although the holding in *Sanchez* rested upon the appellate court's conclusion that good cause to continue the defendant's trial beyond the 60-day period was not shown in that case *because the delay was directly attributable to the state's failure to provide a sufficient number of public defenders to implement the statutory right to a speedy trial*, the opinion in *Sanchez* contained broad language that went beyond the circumstances presented in that case and suggested that, in general, the state interests served by a joint trial cannot support a finding of good cause to delay a trial under section 1382. (See *Sanchez*, *supra*, 131 Cal.App.3d at p. 893 ["We conclude that on balance, whatever unspecified 'interests of justice' might be promoted by a joint trial in the underlying prosecution, the state interest cannot be permitted to subordinate the conflicting right of petitioner to a trial within the 60-day period"].) A number of subsequent Court of Appeal decisions have relied upon this language in *Sanchez* as supporting the general principle that "[t]he preference for a joint trial of jointly charged defendants does not constitute

good cause to delay one defendant's trial beyond the time period set forth in . . . section 1382 . . . ." (*Escarcega, supra,* 186 Cal.App.3d 379, 386, fn. 4; see also *Arroyo v. Superior Court* (2004) 119 Cal.App.4th 460, 465–466 [14 Cal.Rptr.3d 462].)

As we have explained above, however, past decisions of this court make it clear that the substantial state interests served by a joint trial properly may support a finding of good cause to continue a codefendant's trial beyond the presumptive statutory period set forth in section 1382. (See *People v. Teale, supra,* 63 Cal.2d 178; *People v. Clark, supra,* 62 Cal.2d 870.) And numerous Court of Appeal decisions properly have applied this general principle. (See, e.g., *Ferenz v. Superior Court, supra,* 53 Cal.App.2d 639, 641–643; *People v. McFarland, supra,* 209 Cal.App.2d 772, 776–778; *Hollis v. Superior Court, supra,* 165 Cal.App.3d 642, 646–647; *Greenberger v. Superior Court, supra,* 219 Cal.App.3d 487, 496–501; see *id.,* at pp. 508–511 (conc. & dis. opn. of Johnson, J.).) Furthermore, the provisions of section 1050.1 also clearly establish that the state interest in permitting jointly charged defendants to be tried in a single trial *generally* constitutes good cause to continue a defendant's trial to enable that defendant to be tried with a codefendant whose trial properly has been continued to a date beyond the presumptive statutory deadline.[16] Accordingly, the decisions in *Sanchez v. Superior Court, supra,* 131 Cal.App.3d 884, *People v. Escarcega, supra,* 186 Cal.App.3d 379, and *Arroyo v. Superior Court, supra,* 119 Cal.App.4th 460, are disapproved to the extent they hold or suggest that the state interests served by a joint trial cannot constitute good cause under section 1382 to continue a codefendant's trial beyond the presumptive statutory deadline.[17]

In the present case, the trial court correctly found that the circumstance that defendant Jackson's trial properly was continued beyond the 60-day period constituted a legitimate and appropriate justification for also delaying codefendant Sutton's trial beyond that period. Further, because the trial court continued Jackson and Sutton's trial on a day-to-day basis and the joint trial ultimately commenced only six days after the 60-day period, the duration of the delay in this case clearly was reasonable. Finally, Sutton makes no claim that the short delay in the commencement of the trial adversely affected his ability to defend the charges against him.

---

[16] We note that the decisions in both *Sanchez, supra,* 131 Cal.App.3d 884, and *Escarcega, supra,* 186 Cal.App.3d 379, predated the 1990 enactment of section 1050.1.

[17] The federal Speedy Trial Act of 1974 (18 U.S.C. § 3161 et seq.) similarly recognizes that the interest in conducting a single joint trial of jointly charged codefendants constitutes a legitimate and appropriate basis for extending the ordinary presumptive deadline set forth in the statute. (See 18 U.S.C. § 3161(h)(6) [excluding from the presumptive speedy-trial period "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"]; see generally 5 LaFave et al., Criminal Procedure (3d ed. 2007) § 18.3(b), p. 144 & fn. 36.)

Under these circumstances, we conclude the Court of Appeal properly found that the trial court did not abuse its discretion in finding good cause to delay Sutton's trial to permit him to be tried jointly with Jackson and in denying Sutton's motion under section 1382 to dismiss the charges against him.

## III

For the reasons discussed above, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Appellants' petitions for a rehearing were denied May 20, 2010, and the opinion was modified to read as printed above.