Filed 4/26/16  P. v. Cordova CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B266340 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA033094) |
| v. | |
| STEVE CORDOVA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William C. Ryan, Judge.  Affirmed.

Jonathan B. Steiner, Executive Director, Richard B. Lennon, California Appellate Project, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On April 1, 2016, appellant Steve Cordova filed an application for the recall of his sentence under Penal Code section 1170.126. The superior court denied the application because it was filed more than two years after the effective date of Proposition 36 (November 7, 2012) and also because there was no good cause for the delay in filing the application. We agree with the trial court that in this case there was no good cause to justify the untimely filing, and therefore affirm the judgment.

## PROCEDURAL HISTORY

On October 29, 1998, in Los Angeles County Superior Court case No. GA033094, appellant was convicted by a jury of grand theft auto (Pen. Code, § 487, subd. (d)),[1] possession of a forged driver's license (§ 470, subd. (b)) and the misdemeanor offense of evading an officer (Veh. Code, § 2800.1). Appellant was found to have sustained seven prior convictions within the meaning of the Three Strikes law and with having served four prior prison terms. Appellant was sentenced on January 26, 1999, to two concurrent 25-years-to-life prison terms under the Three Strikes law and to two consecutive one-year prison term enhancements.[2]

On March 3, 2015, appellant filed an application in case No. GA033094 under section 1170.18 to reduce the felonies to misdemeanors. The People opposed this application. The superior court denied this application on March 6, 2015, on the ground that the offenses in question were not eligible to be reduced to misdemeanors. There appears to have been no appeal from this order.

---

[1] All statutory references, unless otherwise noted, are to the Penal Code.

[2] In another proceeding that has no direct relationship to this appeal, appellant was found guilty on March 5, 1999, by a jury in Los Angeles County Superior Court case No. SA030400 of second degree robbery (§ 211) and carjacking (§ 215, subd. (a)). He was also found to have been armed with a dangerous weapon during the commission of these offenses. He was sentenced under the Three Strikes law to a term of 72 years to life for theses offenses, a term which included four 5-year terms for prior serious felony convictions. This sentence was to run consecutively to the sentence in case No. GA033094.

On April 1, 2015, in case No. GA033094, appellant filed an application under section 1170.126 to recall the sentence and to reduce his sentence to a determinate term of six years, with three years each for the grand theft auto and forged driver's license, and (apparently) a concurrent jail term for evading an officer. On June 9, 2015, the superior court denied the application as untimely, having been filed five months after the deadline of November 7, 2014, and also because "no good cause has been shown which would excuse compliance with this deadline."

On June 29, 2015, appellant filed a "Request for Relief from Default and for Reconsideration of Order Denying Proposition 36 Petition" (hereinafter, Request for Relief). The superior court denied this request on July 17, 2015. This appeal is from that order.[3]

## THE GROUNDS ASSERTED FOR LATE FILING

The Request for Relief states that soon after the passage of Proposition 36, appellant wrote the public defender, who replied that because one or more of appellant's prior convictions were for serious or violent felonies, he was ineligible. Appellant also heard from persons he describes as "prison law library inmate clerks" that sooner or later someone would take up the question whether inmates with "combination judgments of eligible and ineligible counts" would be entitled to relief on the eligible counts. Accordingly, appellant ". . . opted to wait and see since he had been told he had 2 years from 11-7-2012 and reasonably figured something would happen in his favor in that time."

The Request for Relief goes on to relate that in *Braziel v. Superior Court* (Apr. 9, 2014) 225 Cal.App. 933, review granted on Jul. 30, 2014, the Court of Appeal had held that if any of the counts were serious or violent felonies, the inmate was barred from

---

[3] The order denying a petition or application submitted under section 1170.126 is appealable. (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 601.) We construe the Request for Relief to be the application under section 1170.126 since it fully sets forth Cordova's case.

3

seeking relief. According to appellant's opening brief, there were three other published decisions which so held.**4** The "inmate clerks" informed appellant, apparently based on *Braziel v. Superior Court*, that he was precluded from relief under Proposition 36. The Request for Relief states: ". . . so Jackson [an alias for appellant] did not file."

We digress from an account of the Request for Relief to note that in *In re Machado* (May 30, 2014) 226 Cal.App.4th 1044, 1057, review granted Jul. 30, 2014, the Court of Appeal held that a person who had been convicted of both an ineligible and an eligible offense was nonetheless entitled to Proposition 36 relief on the eligible count. This was the view eventually endorsed by the California Supreme Court in *People v. Johnson and Machado* (Jul. 2, 2015) 61 Cal.4th 674.

Returning to the Request for Relief, appellant relates that upon the passage of Proposition 47, he "had new hope" and that he filed an application to reduce one (or possibly more than one) of his convictions to a misdemeanor but that this application was denied, allegedly with instructions that "he may only file a Prop[] 36 petition—but did not advise [appellant] he would also need to include an explanation why his Prop[] 36 petition was being filed after 11-7-2014."

The Request for Relief closes by noting that the issue was pending before the California Supreme Court. In fact, *People v. Johnson and Machado*, *supra*, 61 Cal.4th 674, came down three days after the Request for Relief was filed. Noting that it was not clear what constitutes good cause for delay in filing an application for relief, the Request for Relief concludes by stating that appellant ". . . believes that waiting for a decision from the Supreme Court on the question of threshold eligibility for persons committed on so-called 'hybrid' judgments probably constitutes good grounds to relieve a party from default and permit an untimely Prop[] 36 petition."

---

**4**      *Braziel v. Superior Court* was neither the first nor last case on this issue.

4

## THE TIMETABLE

| | |
|---|---|
| April 9, 2014 | *Braziel v. Superior Court* (2014) 225 Cal.App. 933 |
| May 30, 2014 | *In re Machado* (2014) 226 Cal.App.4th 1044 |
| July 30, 2014 | The Supreme Court grants the petitions for review in *Braziel* and *Machado* |
| November 7, 2014 | The two-year limitation on filing section 1170.126 expires |
| April 1, 2015 | Appellant files his first section 1170.126 petition |
| June 29, 2015 | Appellant files the Request for Relief |
| July 2, 2015 | The Supreme Court hands down *People v. Johnson and Machado* (2015) 61 Cal.4th 674. |

## THE SUPERIOR COURT'S RULING

The superior court's written ruling states: "[Appellant] admits that he knew of the two-year deadline imposed by Penal Code section 1170.126(b) from the effective date of Proposition 36 (November 7, 2012). He made a calculated decision not to file his own petition within the two-year time frame when he could have filed his own petition, had it denied and filed an appeal or waited for an appeal from another petitioner's denied petition on the same point of law. Instead, [appellant] failed to timely file his petition and simply hoped that the law would change within the two-year time frame. Having second thoughts, it appears that [appellant] then filed an untimely petition almost five months after the two-year deadline imposed by Penal Code section 1170.126(b). [¶] Many other inmates have timely filed their petitions without hoping that the law would change in their favor prior to filing the petition. They simply filed their petitions in a timely fashion and awaited the trial court's decision before appealing an unfavorable ruling. Here, [appellant] admits that he expressly knew of Proposition 36's deadline and made a calculated decision not to file in a timely manner. He illogically 'figured [a change in the law] would happen in his favor in that time.' [Citation.] [¶] Accordingly, the Court did not find 'good cause' under Penal Code section 1170.126(b) after [appellant's] April 1, 2015 petition was late filed and it does not find any new law, facts or circumstances to

5

warrant reconsideration of its prior order denying the petition for recall of sentence under Penal Code section 1170.126."

**APPLICABLE STANDARDS**

*1.      Standards governing delays in filing*

Subdivision (b) of section 1170.126 provides in pertinent part that a person may file a petition "for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause." Appellant and respondent agree that section 1170.126 does not define "good cause."

Section 1382 contains various time limitations that ensure that a defendant receives a speedy trial. Appellant suggests, and respondent agrees, that the judicially crafted elements of good cause under section 1382 should apply to good cause as set forth in section 1170.126, subdivision (b): "Section 1382 does not define 'good cause' as that term is used in the provision, but numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay." (*People v. Sutton* (2010) 48 Cal.4th 533, 546.)

Bringing a person to trial is, of course, an entirely different matter from filing an application under section 1170.126. However, the analogy is not based on the similarity in the functions that are involved in sections 1382 and 1170.126 but rather on whether *delays* should be evaluated along similar lines under these provisions.

It seems that delay and good cause have identical relationships in sections 1170.126 and 1382. Delay is a negative under both provisions and good cause functions under both provisions as a rationale or excuse for the delay.

Prejudice, on the other hand, is far less likely to be a significant factor under section 1170.126 than under section 1382. Under the latter provision, prejudice is a very important and highly pertinent consideration. However, under section 1170.126, it is difficult to see how the prosecution would ever be significantly prejudiced by a delay in

6

the filing of an application under section 1170.126. Thus, we conclude that the first two factors set forth in *People v. Sutton*, *supra*, 48 Cal.4th 533, 546, are helpful analytical tools in the determination of good faith under section 1170.126 but that the third factor is, in most cases, of little or no moment.

## 2. *Standards of appellate review*

Respondent states that the standard of appellate review should be whether the trial court abused its discretion in making the good faith determination. While respondent suggests that appellant would also apply this standard, it appears to us that this may not be the case since appellant contends that the superior court *erred* in concluding that good cause was not shown. At another juncture, however, appellant's opening brief states that good cause determinations are reviewed for abuse of discretion.

It has been noted that good cause determinations generally are subject to the abuse of discretion standard of review. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:104.21, p. 8-71.) Good cause determinations under section 1382 are reviewed under the abuse of discretion standard. (*People v. Sutton*, *supra*, 48 Cal.4th at pp. 546-547.)

We will not decide as a general proposition which standard should govern because in this case there is no dispute about the facts. The issue before us is whether, as a matter of law, waiting for a Supreme Court decision is good cause for the late filing of a section 1170.126 application. When the issue on appeal is one of law, usually the independent or de novo standard of review applies. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:106, p. 8-74, citing, inter alia, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

### THERE WAS NO GOOD CAUSE FOR THE DELAY

The justification for late filing that appellant offers in his petition for a writ of error *coram nobis* is that he was waiting for the California Supreme Court to decide what turned out to be *People v. Johnson and Machado*, *supra*, 61 Cal.4th 674. In appellant's brief on appeal, he claims there was good cause because he was told by the public

7

defender's office and by the prison library inmate clerks that he was not eligible and this excused him from filing his petition.

We begin our discussion of these justifications with the superior court's observation that the decision to delay past the deadline was a calculated decision on appellant's part. This is certainly confirmed by the petition for the writ of error *coram nobis*, as well as by appellant's briefs on appeal. Thus, the usual grounds for rescuing a litigant who has filed late—mistake, inadvertence, surprise, or excusable neglect—are not even remotely invoked. This means that analysis must center on the reason or reasons for deliberately delaying the filing. By what standard should those reasons be judged in determining whether they constitute good cause?

If the "good" in good cause means anything in the context of this case, it means that the reason given should be at least arguably a sound reason. Certainly, a frivolous reason could not qualify as good cause. The soundness of the reasons given can be evaluated in terms of what we know about the operations of the legal system. If, on balance, the reason given is sound, the reason ought to amount to good cause. However, the less sound the reason, the more likely that there should not be a finding of good cause.

With the foregoing in mind, we analyze the soundness of the reasons appellant gives for the deliberate late filing.

Appellant gives two reasons, one in his petition and the other in his appellate brief, why he deliberately decided not to file within the deadline. Both of those reasons are predicated on the assumption that following the decision in *Braziel v. Superior Court*, *supra*, 225 Cal.App. 4th 933, the law was against him. That is, he was waiting for the Supreme Court decision in the hope that the law would change in his favor (the reason in the petition) and he was told by various parties that, under existing law, he was ineligible (the reason in the appellate brief).

However, it is not true that the law was uniformly against him.

Between May 30, 2014 and July 30, 2014, *In re Machado*, *supra*, 226 Cal.App.4th 1044, 1057, held in appellant's favor. Had he filed his application between May 30, 2014

8

and July 30, 2014, he could have relied on *In re Machado*. The application would have been timely and it would have been supported by a favorable appellate decision.

Appellant cites *In re Machado*, *supra*, 226 Cal.App.4th 1044, in his appellate brief, but he does not acknowledge that this case significantly undermines his claim that the law was against him.

*Machado* is significant for more than its midsummer night's existence from May to July 2014. When the issue wound up in the Supreme Court on July 30, 2014, with the grants of review in all the cases on threshold eligibility, there was at least one case that favored appellant's side of the issue and that was, of course, *Machado*. That it is not numbers but principles that count in this setting is shown by the fact that the Supreme Court opted for *Machado*. Thus, appellant's position throughout 2014 and before the deadline was not nearly as hopeless as he portrays it. In fact, some might say that if the Courts of Appeal are split on a given issue, one would usually give both sides something close to an even chance of success.

Given what the situation actually was in 2014, and particularly in the early summer of that year, and also given that there was a clear two-year limitations period, there simply was no reason not to file the section 1170.126 petition or application prior to the deadline. We agree with the superior court's observation that many inmates did file their petitions in a timely manner without the hope that the law would change in their favor. There was absolutely no downside for appellant to have done the same.

Another way of evaluating the decision not to file is that there was nothing to be gained by not filing. Appellant's chances were not improved by not filing; in fact, they were diminished by not filing, in that appellant was not in a position to benefit from what eventually happened. It was much better to be waiting for a Supreme Court decision with a petition on file than to wait for it with an unfiled petition.

As far as not filing because appellant was told he was ineligible, the law, as we have seen, was much in flux throughout 2014. Given the instability and flux in the system, it was simply too early to conclude that appellant was ineligible.

In sum, taking account of the realities of the legal system, neither reason given by appellant is sound. In fact, both reasons are remarkably poor.

Finally, appellant's position is substantially weakened by the fact that he did not in fact wait until the Supreme Court made its decision. If he filed the application, as he did, late and before the Supreme Court decision, why not file the application in a timely fashion, albeit also before the Supreme Court's decision? This strongly suggests that the good cause that appellant espouses—waiting for the Supreme Court decision—was not *in fact* the cause of the delay. As far as ineligibility is concerned, that became an open question as soon as the Supreme Court granted review in July 2014. Appellant was no less or more eligible when he ultimately filed his application than he was prior to the expiration of the two-year limitations period. In short, appellant's act of filing the untimely petition before the decision of the Supreme Court in *People v. Johnson and Machado*, *supra*, 61 Cal.4th 674, seriously undermines his credibility in claiming to rely on the two stated reasons for not filing. Thus, not only were his reasons unsound, it is questionable whether he ever actually relied on them.

Finally, while the delay was short, the case for filing in a timely manner was, on these facts, so strong as to render the factor of the length of the delay relatively unimportant.

We hold as a matter of law that, on these facts, neither reason given by appellant not to file a petition under section 1170.126 by the statutory deadline was good cause under subdivision (b) of section 1170.126.

**DISPOSITION**

The judgment (order) is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


CHAVEZ, J.                    HOFFSTADT, J.

10