Filed 7/14/22  Yach v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHANNA MARIE YACH, | |
| Petitioner, | |
| v. | G061213 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. Nos. 19WM16126, 30-2022-01243772) |
| Respondent; | O P I N I O N |
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, John R. Zitny and Kevin Haskins Judges.  Petition granted.

Martin Schwarz, Public Defender, Adam Vining, Assistant Public Defender and Jamie Kim, Deputy Public Defender for petitioner.

Todd Spitzer, District Attorney and John R. Maxfield, Deputy District Attorney for Real Party in Interest.

\*          \*          \*

THE COURT:\*

Petitioner Johanna Marie Yach filed a petition for writ of mandate alleging respondent court erred when it denied her motion to dismiss the complaint on the basis there was no good cause to continue her trial in violation of Penal Code section 1382.[1] We agree and the petition is granted.

## FACTS

On December 16, 2016, petitioner, Johanna Marie Yach, was arraigned out of custody on a misdemeanor complaint alleging hit and run with injury, and hit and run with property damage. Yach entered into a general time waiver until June 25, 2021, and at that time, trial was set for September 13, 2021, as day 0 of 10, with September 23, 2021, as the last day to start trial at the expiration of the 10-day trailing period in section 1382(a)(3)(B).

On September 13, 2021, petitioner announced ready for trial, and the People filed a motion to continue the trial pursuant to section 1050. The People's

---

\*  Before Moore, Acting P. J., Sanchez, J., and Marks, J.\*\*
\*\* Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]  All further references are to the Penal Code.

2

declaration explained that a continuance was necessary for two reasons.  First, they were unable to subpoena the victims because they now reside out of state and they were not due to return to California until September 23, 2021, and second, Officer Roberts, the investigating officer was unavailable.  According to the prosecutor's declaration, on August 1, 2021, the People issued a subpoena for Officer Roberts to appear for trial on September 13, 2021, and on September 7, the People receive notice from the liaison of the Huntington Beach Police Department that Officer Roberts "would not be available to appear because [he is] currently out on injury with an unknown date of return."  According to the declaration, Officer Roberts is "a material witness because he was the investigating officer and he is the only known witness who can testify to Defendant's statements, as well as statements of victims and witnesses, if necessary."

The trial court did not rely on the prosecutor's declaration and explained that pursuant to *Owens v. Superior Court* (1980) 28 Cal.3d 238 (*Owens*), the People are required to demonstrate the officer's testimony is material, and his testimony cannot be proven by some other source.  The trial court said, "that's not established in the declaration.  It's just the person's just described as the commanding officer . . . so you need a little bit more."  In response, the prosecutor said Officer Roberts was "also a witness to the Defendant's statements."  At this point, it appears that defense counsel may have incorrectly represented to the trial court there was body-worn camera footage, but also said, "There are other officers that were involved."  The prosecutor corrected counsel and said there was no body-worn camera footage, but that Yach did make statements, and when asked by the court whether Yach's statements were inculpatory or exculpatory, the prosecutor said they were inculpatory statements where Yach admitted "becoming scared and fleeing the scene without providing information."  The trial court found good cause and said, ". . . we're on zero of ten.  My inclination would be just to start by trailing it to next Monday [September 20th], which would be Day 6 [*sic*] of 10.

3

On September 20, 2021, day 7 of 10, the People filed a second motion to continue the trial pursuant to section 1050. According to the declaration filed with the motion, on September 17, 2021, the prosecutor spoke to an individual in the personnel department of the Huntington Beach Police Department who stated that Officer Roberts' "expected date of return is unknown, and she could not provide further details regarding his condition." The declaration states further that Roberts had a scheduled follow-up doctor's appointment the next day, at that time more information would be known, and it was "possible Officer Roberts will be cleared for 'light duty' after Tuesday [September 21st]." The declaration concludes by stating that "Officer Roberts is a material witness because he was the investigating officer and he is the only known witness who can testify to Defendant's inculpatory statements, as well as statements of victims and witnesses, if necessary."

Trial was trailed to September 21st, to September 22nd, and then to September 23rd, day 10 of 10 in anticipation of additional information regarding Officer Roberts' availability. In court, the prosecutor said that according to the personnel department, "[Officer Roberts] will be out for 13 to 14 weeks." The trial court said, "So, based on the previous representations that the police officer is a material witness on the case, the Court's inclined to find good cause to continue the matter until January 10th. However, that would, in essence, be the last day. And unless there was some good cause to continue it beyond that, it would have to go to trial on that day." "So I'll just find that there's good cause to continue the matter until January the 3rd. That would, in the Court's view, at this point in time, be the last day to bring the Defendant to trial."

On January 3, 2022, petitioner announced ready for trial and the People filed a third motion to continue the trial. According to the declaration in support of the motion, a subpoena was "submitted through the proper channels on December 7, 2021." The declaration states, "Officer Jeremy Roberts was the Investigating Officer for this case and is thus . . . a necessary and material witness." According to the declaration, the

4

People were advised the subpoena could not be served on Officer Roberts and it was returned to the People with the notation, "UNABLE TO SERVE [¶] IOD [Injured on Duty], UNKNOWN RETURN."

The declaration in support of the motion to continue states the prosecutor asked the personnel department whether Officer Roberts "may be back by March," a month the prosecutor acknowledges was selected at random, and "The Huntington Beach Police Department Personnel Department responded that they will not know until it is closer to the date but chances are he probably won't be back."

After petitioner complained this was the second continuance based solely on Officer Roberts' injury status, the officer had never actually been served with a subpoena, there was no impediment to the People serving Officer Roberts as a civilian witness, and the People acknowledged "they have no idea . . . when this officer's going to be back," counsel said, "So . . . what's the plan here?  Are we just going to keep continuing this indefinitely, hoping that this officer magically reappears?"

After a break in the proceedings, the trial court indicated that it reread *Owens* and invited the People to discuss the five factors required for a finding of good cause to continue the trial based on the unavailability of a witness.  Despite declining the court's invitation, the court nonetheless persisted and the following exchange took place:

"[The court:] . . . And how is the officer's testimony . . . material, in what way?

[The prosecutor:] . . . he is a material witness.

[The court:]  But how?

[The prosecutor:]  He is the investigating officer in this matter.

[The court:]  What's he going to say, though, that, that can't be . . . found in any other source?

[The prosecutor:]  . . . again, the, the officer, given the circumstances that he's the only investigating officer that conducted this case . . . we would need this, given

5

the seriousness of the hit-and-run.  He was the one that was there to determine the, the nature of this accident.  And again, given the severity that it's a hit-and-run with injury, we would need the officer's . . . opinion to testify.  He would be a material witness.

[The court:]  Okay.  Is, is there any chance that another officer could actually do the testimony?  Was there another officer on the scene that has the same information?

[The prosecutor:]  . . .  Again . . . we have other officers, but he was the investigating officer at the scene.

[The court:]  . . . I believe on one of the declarations . . . that there were admissions made by the Defendant.  And were those made by several, or were those given to several officers, or was that just the . . . one.

[The prosecutor:]  So, Officer Turner conducted a follow-up investigation . . . .

[The court:]  Okay.

[The prosecutor:]  . . . that would be after the fact.  The initial statements in the investigation overall was conducted by Officer Roberts.

[The court:]  Okay.  And what was the gist of the follow-up?

[¶] . . . [¶]

[The prosecutor:]  There was follow-up investigations speaking with the victims . . . by Officer Turner.  Again, this would be after the fact in terms of the initial hit-and-run that occurred.  So, again, he was not the main investigating officer that was there at the scene of the crime that could speak to the initial assessment of damages and exactly what occurred at the time.  . . . .

[The court:]  Okay.  He was the officer or he wasn't?

[The prosecutor:]  Turner was supplemental.  Let me see one . . . Let me just double check one thing.  One moment, Your Honor.  There was an, it looks like there was an assisting officer  . . . Officer Gillam, that was there.  But, again, he did not do a

6

report with Officer Roberts.  And again, Officer Turner, the report that he conducted was a supplemental investigation to the initial scene."

According to the prosecutor, Officer Turner's supplemental follow-up report was prepared about a month after the accident.

On the issue of whether the People could produce Officer Roberts as a witness within a reasonable time, the prosecutor said, "Again . . .  it's unknown.  When I followed up with Huntington Beach Police Department personnel department, which is our liaison, [they] indicated that they couldn't tell me anything.  So I followed up with personnel, as I indicated in the 1050 motion, and they indicated they did not have a return date.  And then when I inquired about March, as just a rough estimate, they indicated the personnel department, they wouldn't . . . however I worded it on the 1050—basically, that they did not have . . . an exact date that . . . Until it gets closer to that date, they, they could not tell me.  They don't have an exact date of return."

The trial court replied, "Yeah.  I, I don't think . . . the law looks to it continually going on and on . . . ."  Nonetheless, the court said, "It does say, in the . . . 1050 by the People on September 20th, 2021, that, that it was indicated that Officer Roberts may be cleared for light duty.  I mean, does that give some indication that . . . he would be available fairly soon, because I think you said earlier . . . not until March or  . . at least until March."

The prosecutor repeated, "I can only, again disclose what's been told to me . . . in terms of what personally has been told to me.  So, to me . . . I just know he was injured on duty, and then the personnel department indicated they don't have a date of his return.  [¶]  Again, I would be asking the Court to have another continuance given.  He's a necessary and material witness.  I understand the Court and Defense's concern, for continuing this matter.  . . . but, again, based on the, the need for this witness, we would be requesting one more continuance with the hopes that perhaps that he could return."

7

Over petitioner's objection the trial court found good cause to continue the trial and found the officer's testimony was material and said, "The investigating officer was the first one there. He's the one that . . . has the . . . skill and . . . ability to analyze the situation and give accurate testimony that would help the jury. It does not appear to be cumulative. It appears like that the . . . different officers had different assignments and did different types of investigations. And the Court would find that . . . within a period of . . . six seeks would be within a reasonable time period."

On January 11, 2022, petitioner filed a motion to dismiss on the basis that the trial court continued the trial without good cause in violation of section 1382. The parties argued the motion to dismiss before respondent court on January 26, 2022, and on the issue of whether the People could obtain Officer Roberts' testimony within a reasonable time, petitioner said, "if the Court looks at the declaration filed by the People, the 1050, the fourth . . . *Owens* element, it requires that they be able to obtain their . . . witness or their information within a reasonable time period. [¶] But the problem with the 1050 . . . is it very directly says they don't think he's coming back within any sort of time period that they can estimate for the Court. So they asked for a 1050 with no concept of when this witness would ever actually return. And then the Court just granted a 1050 to some shorter time period, but with absolutely no guarantees that this witness would ever be available again."

Respondent court said, "So the question is one of reasonableness. Was it reasonable for Judge Zitny to . . . conclude . . . was that period of time reasonable for either the witness to recover and be available to testify or, as I said, at a minimum, to get information about whether there would be a specific return date after the new trial date set for trial. I can't say, and I don't believe, that the period of the continuance granted was unreasonable under the circumstances."

Respondent court continued and said, ". . . the other thing with respect to medical . . . you're faulting the prosecution for not providing more information about

8

what specifically is wrong with the officer, medically speaking, and how long is he going to be out . . . So, unless the officer decides he wants to . . . put his . . . medical condition on the public record, which most people don't want to do, I'm kind of left with the representation that he's out injured on duty with an unspecified return date. So, in any event, with respect to that, I don't find that Judge Zitny's ruling was unreasonable. So the motion to dismiss pursuant to 1382 is respectfully denied."

Petitioner sought review in the appellate division of the superior court which initially stayed the proceedings, but denied relief and petitioner filed a petition for writ of mandate in this court. Citing *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180, the court ordered real party to file opposition to the petition.

After real party filed opposition, this court issued an alternative writ on May 4, 2022, directing respondent court to vacate the order entered on January 26, 2022, denying petitioner's motion to dismiss pursuant to section 1382, and to enter an order granting the motion to dismiss. On May 23, 2022, respondent court filed a minute order in this court stating respondent court "does not intend to comply" with the alternative writ.

DISCUSSION

The statutory time in which a defendant in a misdemeanor case must be brought to trial is explained in section 1382, subdivision (a), and states that "unless good cause to the contrary is shown" a defendant in a misdemeanor case is entitled to the remedy of dismissal if not brought to trial within 30-days from the date of arraignment if the defendant is arraigned in custody, or 45-days if the defendant is arraigned out of custody.

Unique to the statutory right to a speedy trial is the pretrial remedy of dismissal independent of a showing of prejudice. (*People v. Martinez* (2000) 22 Cal.4th 750, 766.) Under section 1382 "A dismissal is thus mandated in those situations covered

9

by the statute if, at the time a defendant moves therefor, the [prescribed] period has elapsed and good cause for the delay is not shown by the prosecution." (*Sykes v. Superior Court* (1973) 9 Cal. 3d 83, 88-89.) However, the statute states an action shall not be dismissed under this subdivision if "[t]he defendant requests or consents to the setting of a trial date beyond the 30-day or 45-day period. In the absence of an express general time waiver from the defendant, or upon the withdrawal of a general time waiver the court shall set a trial date. Whenever a case is set for trial beyond the 30-day or 45-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (Pen. Code, § 1382, subd.(a)(3)(B).)

Review of the trial court's determination granting a continuance under section 1382 is reviewed for abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 852-853. "[A] defendant seeking pretrial writ review of an order denying a motion to dismiss under section 1382 need only demonstrate that the motion was erroneously denied, i.e., no showing of prejudice is necessary." (*People v. Bona* (2017) 15 Cal. App. 5th 511, 518.)

In this case, after a general time waiver by petitioner, the matter was set for trial on September 13, 2021. Based on a finding of good cause, petitioner's trial was trailed to September 23, 2021, and then continued to January 3, 2022. Although the trial court said twice that January 3rd would "be the last day to bring the Defendant to trial," because the People did not expressly waive the 10-day grace period which is "'automatic' by operation of Penal Code section 1382, subdivision (a)(2)(B), and cannot be unilaterally waived by a defendant," (*Medina v. Superior Court* (2000) 79 Cal.App.4th 1280, 1286-1287) the last day to start petitioner's trial in this case was January 13, 2022.

Nonetheless, the parties appear to agree the issue is whether the trial court abused its discretion when it found good cause to continue petitioner's trial from January 3, 2022, to February 22, 2022, based on the unavailability of Officer Roberts, and

10

thereafter whether respondent court erroneously denied the motion to dismiss pursuant to section 1382.

Even though the trial court "'has broad discretion to determine whether good cause exists to grant a continuance of the trial,' " (*People v. Sutton* (2010) 48 Cal.4th 533, 546; *People v. Reed* (2018) 4 Cal.5th 989, 1004) when a claim of good cause is based on the need for additional time to secure the attendance of prosecution witnesses, the burden of showing good cause to prevent dismissal falls on the prosecution and "a particularized showing is required." (*Owens v. Superior Court*, *supra*, 28 Cal.3d 238, 250-251.) As *Owens* explains, "Even in those situations where an accused's right to a speedy trial is not at stake, '(i)n order to invoke the discretion of the trial court to grant a continuance to obtain the presence of a witness, the moving party has the burden of showing that the following legal criteria have been satisfied: (1) That the movant has exercised due diligence in an attempt to secure the attendance of the witness at the trial by legal means; (2) that the expected testimony is material; (3) that it is not merely cumulative; (4) that it can be obtained within a reasonable time; and (5) that the facts to which the witness will testify cannot otherwise be proven.' [Citations.]" (*Ibid*; *People v. Jenkins* (2000) 22 Cal.4th 900, 1037.)

Challenging all five factors in *Owens*, petitioner contends the court abused its discretion when it found good cause to continue the trial to February 22nd because the People "failed to establish: (1) the exercise of due diligence in an attempt to secure the presence of Officer Roberts at trial; (2) that Officer Roberts' testimony was not merely cumulative; (3) that the facts to which he would testify could not otherwise be proven; and (4) that Officer Roberts' testimony could be obtained within a reasonable time."

In the opposition filed on April 5, 2022, the People advanced two reasons why the petition should be denied. First, as a preliminary matter, the People urge the court to summarily deny the petition without reaching the merits because according to the People, petitioner failed to provide this court with an adequate record for review.

11

Citing to the California Rules of Court, the People complain that instead of submitting a "proper transcript" of the proceedings, petitioner has "purportedly" submitted electronic copies of the audio recording of the proceedings without their approval, and also submitted a transcript of the recordings prepared by an individual who the People speculate may be an employee or a person retained by the Orange County Public Defender's Office, but "She is not a court clerk or a court employee. She did not prepare the exhibits under the direction of the clerk and was not designated by the court. Nor does it appear that she has been certified by the federal court system, the Judicial Council, or verified by the clerk of the court to be skilled in producing transcripts [and] [t]herefore . . . not qualified to prepare a transcript of the original reels containing the electronic recordings of the proceedings for purposes of this petition for writ of mandate." According to the People, "Therefore, the exhibits do not constitute a proper transcript and thus not to be filed as part of the record."

Rule 8.486(b)(1) states, "A petition that seeks review of a trial court ruling must be accompanied by an adequate record, including copies of . . . A reporter's transcript of the oral proceedings that resulted in the ruling under review." Rule 8.486 states further that "If the petition does not include the required record or explanations or does not present facts sufficient to excuse the failure to submit them, the court may summarily deny a stay request, the petition, or both." (Cal. Rules of Court, rule 8.486(b)(4).)

We decline to exercise the court's discretion to summarily deny the petition based on rule 8.486(b)(4) of the California Rules of Court. We also decline the People's invitation to apply rules 2.952, 8.868, and 8.931, rules which apply to the superior court and the appellate division of the superior court, but not to this court, (Cal. Rules of Court, rules 2.2, 8.800(a)) to sidestep the merits of the petition, and instead find the record filed by petitioner is adequate for review, especially since the People have had the opportunity to have the prosecutor who appeared in the proceedings identify any substantive errors,

12

omissions, or misrepresentations in the audio recordings and the transcripts of the recordings filed by petitioner, and have failed to do so.

The People's remaining argument reaches the merits of the petition and the People contend the petition should be denied because the court did not abuse its discretion when it found good cause on January 3, 2022, to continue petitioner's trial to February 22, 2022. We disagree and find there are no facts in the record from which the trial court or respondent court could have found good cause to continue the trial based on Officer Roberts' absence.

The People's opposition focuses almost exclusively on the first factor in *Owens* and insists that even though Officer Roberts was never served with a subpoena, the People exercised due diligence in compliance with section 1328 in their attempt to secure Officer Roberts' appearance at trial. While there is merit to the People's claim, there is equal merit to petitioner's contention that due diligence requires a genuine attempt to secure the attendance of the witness in court on the date set for trial, and following a procedure that has no chance of success does not constitute due diligence. (*Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1278.)

We need not decide the issue of whether the People exercised due diligence to secure Officer Roberts' appearance at trial, because even assuming, without deciding that the People exercised due diligence, the record is devoid of any evidence that the People demonstrated that Officer Roberts' testimony is material, not cumulative, his testimony cannot otherwise be proven, or that it can be obtained within a reasonable time, if at all.

With respect to the remaining four factors in *Owens*, the People contend they could not proceed to trial in Officer Roberts' absence on the basis that his testimony is material because he "determined the nature of the collision, assessed the damage, took initial statements at the scene, and [he] was the only officer to write a report about these initial observations and statements."

13

With respect to whether Officer Roberts' testimony could be obtained within a reasonable time, the People state that Officer Roberts' "testimony could . . . *be potentially* obtained within a reasonable time. (Emphasis added.)

At the hearing on January 3, 2022, the prosecutor made clear, repeatedly, that Officer Roberts' testimony was material because he was the investigating officer in the case. When asked why his testimony was necessary and material to the case, the prosecutor said, "given the circumstances that he's the only investigating officer that conducted this case . . . we would need this, given the seriousness of the hit-and-run. He was the one that was there to determine the, the nature of this accident. And, again, given the severity that it's a hit-and-run with injury, we would need the officer's . . . opinion to testify. He would be a material witness."

When asked to provide further clarification of why Officer Roberts' testimony is material, the prosecutor explained further and said, "he could speak to initial assessments, the, again, the scene in terms of what his personal observations of the vehicles, personal . . . assessments in terms of what he observed with the victims. He, as the investigating officer, he has the training and experience to make those determinations, because he was there to respond to that, and he's the one, again, that conducted the investigation versus any other reporting officer that would be… We are looking at secondary secondhand information at that point absent the supplemental report by . . . Officer Turner, who did those additional statements. But those were not the initial investigating statements that Officer Roberts could speak to."

According to the People, "The prosecutor confirmed that Officer Roberts was the investigating officer in this case. The prosecutor confirmed that Officer Roberts was a material and necessary witness. Specifically, the prosecutor informed the court that Officer Roberts was the investigating officer at the scene. The prosecutor emphasized that Officer Roberts could testify about his initial assessments, the scene based on his personal observations of the cars, and the people involved in the collision."

14

The People conclude by stating, "As the investigating officer in this case, there is no question that his testimony was material and not cumulative, and the facts to which he would testify could not otherwise be proven."

We disagree there was good cause to continue the trial on January 3rd for three reasons. First, the record does not support a finding that Officer Roberts' testimony is material. Petitioner is charged with hit and run causing injury and hit and run causing property damage in Vehicle Code section 20001, subdivision (a), and section 20002, subdivision (a). According to the jury instructions, "It does not matter if someone else caused the accident or if the accident was unavoidable." (CALCRIM Nos. 2140, 2150.) At trial, the People have the burden to prove that "1. While driving, the defendant was involved in a vehicle accident[.]" (CALCRIM Nos. 2140, 2150.) "2. The accident caused damage to someone else's property[,]" (CALCRIM No. 2150) and "The accident caused (the death of/ [or] [permanent, serious] injury to) someone else[.]" (CALCRIM No. 2140.) "3. The defendant knew that (he/she) had been involved in an accident that caused property damage [or knew from the nature of the accident that it was probable that property had been damaged,]" (CALCRIM No. 2150) and "The defendant knew that (he/she) had been involved in an accident that injured another person [or knew from the nature of the accident that it was probable that another person had been injured]." (CALCRIM No. 2140.) "AND [¶] 4. The defendant willfully failed to perform one or more of the following duties:" (CALCRIM Nos. 2140, 2150) (a) to immediately stop at the scene of the accident, (b) to immediately provide the owner or person in control of the damaged property, the person struck or the driver or occupants of any vehicle collided with, or any peace officer at the scene of the accident with his or her name, current residence address, the name and address of the owner of the vehicle the defendant was driving if the defendant is not the owner, the names and current residence addresses of any occupants of the defendant's vehicle who were injured in the accident, the registration number of the vehicle he or she was driving, and when requested, to show his

15

or her driver's license, and (c) to provide reasonable assistance to any person injured in the accident.

Since the People have never claimed that Officer Roberts was a percipient witness to the accident, but only to its aftermath, every element required to sustain the prosecution's burden of proof is capable of being proven solely based on the testimony of the victims and any witnesses to the accident, who, according to the record, appear to be available to testify for the prosecution.

Because the jury will be instructed that "It does not matter if someone else caused the accident or if the accident was unavoidable," (CALCRIM Nos. 2140, 2150) the prosecutor's representation that Officer Roberts' testimony and personal observations are material because "he could speak to initial assessments," he could testify to "the seriousness of the hit-and-run," "the nature of [the] accident," and he has "the training and experience to make . . . determinations," lose significance because they are neither direct nor circumstantial evidence of guilt where the only relevant evidence is whether petitioner was driving when involved in the accident, the accident caused injury to a person or damage to someone else's property, petitioner knew she had been involved in an accident that caused an injury or damage, and petitioner failed to perform one of the enumerated duties in the jury instructions.

Based on the prosecutor's vague and ambiguous description of Officer Roberts' "assessments" and "determinations," the People failed to make a "particularized showing" that Officer Roberts' testimony is either material, or necessary to establish the elements in CALCRIM Nos. 2140 and 2150.

Second, the record does not support a finding that Officer Roberts' testimony is not cumulative, or that Officer Roberts' testimony cannot otherwise be proven. Presumably the trial court recognized the lack of specificity in the prosecutor's explanation of how Officer Roberts' testimony could not otherwise be proven and asked, in three different ways, "What's he going to say . . . that can't be . . . found in any other

16

source?" [¶] . . . "Is, is there any chance that another officer could actually do the testimony? Was there another officer on the scene that has the same information?" [¶] . . . [¶] I'm just trying to . . . determine what would be unique about Jeremy Roberts's . . . testimony and need to be . . . present, why another officer could not . . . fill in that role." Based on the trial court's persistence seeking additional information, the prosecutor finally divulged the name of a second officer who was present and said, "it looks like there was an assisting officer . . . Officer Gillam, *that was there*," which undermines the impression that Officer Roberts had been the only officer at the scene capable of testifying to the aftermath of the accident. (Emphasis added.)

According to the record, the trial court made no inquiry about Officer Gillam's ability to testify in lieu of Officer Roberts, nor compelled the People, who had the burden of proof to make a "particularized showing" of the factors in *Owens*, to produce Officer Gillam in court to verify the prosecutor's representations that only Officer Roberts was capable of testifying in this case. Since Officer Gillam "was there," assisting Officer Roberts in the capacity of "an assisting officer," there is no reason to believe that Officer Gillam did not see the same aftermath of the accident observed by Officer Roberts. If relevant, there is no explanation in the record why Officer Gillam could not testify to the same "seriousness of the hit-and-run, . . . the nature of [the] accident," and "the severity [of] a hit-and-run with injury" that the prosecutor claimed only Officer Roberts was qualified to convey. Because leaving the scene of the accident, and not causing the accident, is the issue in this case, there is no explanation in the record why Officer Gillam could not testify to his or her initial assessments, determinations, and observations of the scene, the vehicles, and the victims. Likewise, there is no evidence in the record that Officer Gillam lacks the experience or training necessary to testify to the observations and assessments of the aftermath of the accident.

Although the prosecutor represented that Officer Roberts was necessary because he was the only officer who prepared a police report contemporaneous with the

17

investigation, there is no evidence in the record that Officer Gillam's testimony, or the ability or inability to recall the scene of the accident, hinged on Officer Gillam preparing a police report, and no indication that Officer Gillam's recollection could not be refreshed with Officer Roberts' police report if necessary.

At the hearing on January 3rd, the trial court asked whether petitioner made any statements to Officer Roberts that may have made his testimony necessary. Although the prosecutor failed to answer the question, at the hearing on September 13, 2021, the prosecutor said that petitioner made inculpatory statements to Officer Roberts. But again, in a motion where the People had the burden of proof, and the prosecutor said there was another officer who "was there" assisting Officer Roberts, there is no evidence in the record that the statements made by petitioner were made exclusively to Officer Roberts, and not in the presence of Officer Gillam while assisting Officer Roberts, or in the presence of the victims or witnesses in this case.

Lastly, the trial court's ruling also represents an abuse of discretion because there is no evidence, direct or circumstantial, from which the trial court or respondent court could have determined, or even inferred, that Officer Roberts' testimony could be obtained within a reasonable time.

The only evidence before the courts on the issue of whether Officer Roberts' testimony could be obtained "within a reasonable time," is as follows: On September 13, 2021, petitioner announced ready. The People filed a motion to continue the trial because the victims resided out of state, and also because Officer Roberts was "out on injury with an unknown date of return." On September 20, 2021, the People filed a second motion to continue. The prosecutor's declaration states that Officer Roberts' expected date of return was unknown, but it was possible that Officer Roberts could be cleared for light duty after September 21, 2021. Between September 21, 2021, and the hearing on January 3, 2022, Officer Roberts was not cleared for light duty and he did not return to work. On September 23, 2021, petitioner again announced ready for trial. On

18

the same date, the People stated that Officer Roberts would "be out for 13 to 14 weeks." Over petitioner's objection, the trial court found good cause to continue the trial for over three months to January 3, 2022, as the "'last day to bring the defendant to trial.'" Fourteen weeks after the trial court granted the People's motion to continue the trial, Officer Roberts still had not returned to work. On January 3, 2022, petitioner again announced ready for trial. The People moved for a third continuance. The prosecutor's declaration states that Officer Roberts' "return date was unknown," and according to the personnel department, "chances are he probably won't be back."

We are at a loss to understand how, on this record, the People made a "particularized showing" that Officer Roberts' testimony could "be obtained within a reasonable time," given that each representation of when Officer Roberts *might* return, not only proved false, but the only other information before the court was the prosecutor's statement that Roberts' "return date was unknown," and the communication from the personnel department stating, "chances are he probably won't be back." After the representation in September 2021 that Officer Roberts might be cleared for light duty, and that he would be out for 13 or 14 weeks, there was no further information about a return date, or even a "potential" return date, from which the court could determine that Officer Roberts might return "within a reasonable time." Even the prosecutor had no idea and said, "I just proposed a later date to continue."

Respondent court suggested that it was not the prosecutor's fault for not providing more information "about what specifically is wrong with the officer, medically speaking," but at no time did the parties ever inquire into the nature of the officer's injury or suggest the officer should put his medical condition on the record for the court to determine whether Officer Roberts' testimony could be obtained within a reasonable time.

Based on the declarations filed in support of the motions to continue the trial, and the prosecutor's representations made to the court at the hearings, there is no

19

objective, or even subjective evidence, from which the trial court or respondent court could have deduced, inferred, or even speculated, that Officer Roberts' testimony could be obtained within a reasonable time, and as such it was an abuse of discretion for the trial court to continue petitioner's trial to February 22, 2022, and error for respondent court to deny the motion to dismiss.

## DISPOSITION

The alternative writ issued on May 4, 2022, is vacated.

Let a peremptory writ of mandate issue ordering respondent court to vacate the order entered on January 26, 2022, denying petitioner's motion to dismiss pursuant to section 1382, and enter a new and different order granting petitioner's motion to dismiss case No. 19WM16126. In the interest of justice, the opinion in this matter is deemed final as to this court forthwith and the clerk is directed to issue the remittitur forthwith. (Cal. Rules of Court, rule 8.490(b)(2)(A).)