Filed 11/25/24  P. v. Hernandez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083067 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1900590) |
| RUDY ANGEL HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Otis Sterling III and Matthew C. Perantoni, Judges.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanksi and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Rudy Angel Hernandez of carjacking, evading the police, and resisting arrest. He raises just one issue on appeal—that he was denied his right to a speedy trial. As we explain below, the trial court reasonably found good cause to continue Hernandez's trial because his counsel was about to begin a seven-day trial in another matter. Moreover, Hernandez has not shown any prejudice from the delay. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Late one night in March 2019, Maria Mendoza was getting into her car—a Toyota Corolla—to head to work when she realized she could not find her cell phone. Thinking it might have fallen inside the car, she unbuckled her seatbelt and opened her door to give herself more room to look around. As she leaned over to begin searching, she felt someone—Hernandez—grab her left elbow and pull her out of her car. Hernandez quickly got into the car and drove away.

Mendoza ran back inside her home, found her cell phone, and called 911. Within a few hours, the police were able to track down the Corolla using its LoJack system. They found it unoccupied in the parking lot behind a local casino. When Hernandez returned to the car and began driving away, the police initiated a traffic stop. Although he attempted to flee, Hernandez was apprehended after a short chase.

The prosecution charged Hernandez with carjacking (Pen. Code,[1] § 215, subd. (a)), evading the police (Veh. Code § 2800.2), and misdemeanor resisting arrest (§ 148, subd. (a)(1)). It was further alleged that Hernandez

---

[1] Further undesignated statutory references are to the Penal Code.

suffered four prior strikes (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)) and three prior serious felony convictions (§ 667, subd. (a).)

A jury found Hernandez guilty on all three counts. Before sentencing, the prosecutor dismissed two prior strikes and one prior serious felony. Hernandez admitted the remaining prior conviction allegations. The court then struck an additional strike and prior serious felony in the interest of justice, leaving just one strike and one prior serious felony.

The court sentenced Hernandez to an aggregate term of 16 years, four months in prison as follows: 10 years for the carjacking (the midterm of five years doubled due to the prior strike), 16 months for evading the police (one-third the midterm of two years, i.e., eight months, doubled), and five years for the prior serious felony enhancement. It imposed credit for time served on the misdemeanor offense.

## DISCUSSION

Hernandez contends his case must be dismissed because he was denied his right to a speedy trial. We disagree. The court reasonably continued Hernandez's trial when his counsel became engaged in a different trial for another client and there were no other attorneys immediately available to substitute in on his case. In any event, Hernandez has failed to demonstrate that he was in any way prejudiced by the relatively short delay.

### A.    *Speedy Trial Right:  General Principles*

Under the United States and California Constitutions, the criminally accused are entitled to a speedy trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The speedy trial right is intended " ' " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " ' " (*Elias v. Superior Court* (2022) 78 Cal.App.5th 926, 937 (*Elias*).)

The California Legislature enacted section 1382 to interpret and implement the constitutional speedy trial right. (*Elias, supra,* 78 Cal.App.5th at p. 937; *People v. Johnson* (1980) 26 Cal.3d 557, 561 (*Johnson*).) The statute "provides that when a defendant charged with a felony is not brought to trial within 60 days of arraignment on an indictment or information (and the defendant has not expressly or impliedly consented to having trial set for a date beyond that period), the criminal charges against the defendant shall be dismissed unless there is 'good cause' for the delay." (*People v. Sutton* (2010) 48 Cal.4th 533, 538 (*Sutton*); see also § 1382, subd. (a).)

Section 1382 itself does not define "good cause." (*Sutton, supra,* 48 Cal.4th at p. 546.) But case law has established "that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay." (*Ibid.*) In evaluating good cause, "a trial court must consider all of the relevant circumstances of the particular case, 'applying principles of common sense to the totality of circumstances . . . .' " (*Ibid.*)

A trial court "has broad discretion to determine whether good cause exists to" continue a trial. (*Sutton, supra,* 48 Cal.4th at p. 546.) We review the trial court's good-cause determination for abuse of discretion. (*Ibid.*) " 'Discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered.' " (*Elias, supra,* 78 Cal.App.5th at p. 938.)

## B. *Additional Procedural Background*

In this case, the prosecution filed the information on February 26, 2020 and Hernandez was arraigned the next day. At that point, the last day for trial to begin was April 27. However, the COVID-19 pandemic interrupted

the proceedings. The court continued trial for three months pursuant to general orders implementing emergency relief. When the parties next appeared on June 26, the defense requested a continuance and Hernandez waived time until July 27.

On July 10, 2020, Hernandez made a *Marsden*[2] motion to replace his public defender, which the court granted. The court appointed an attorney for Hernandez from the conflict panel about one week later. Hernandez then waived time to December 2 to give his new counsel time to prepare.

The parties announced ready for trial on November 2, 2020. But due to the ongoing pandemic, all trials were suspended until March 2021. The court continued the case until then. When the parties returned on March 4, 2021, the prosecution announced ready, but the defense needed more time. The court granted several continuances for the defense and Hernandez waived time until August 2.

On July 29, 2021, Hernandez made another *Marsden* motion, which was granted. He agreed to waive time to November 16 so that new counsel could be appointed and get up to speed on his case. But on October 26, Hernandez made yet another *Marsden* motion, which was also granted. He then waived time to March 16, 2022. On February 16, 2022, he made a fourth *Marsden* motion, then withdrew it and asked to represent himself instead. The court granted this request, but at the end of May, Hernandez changed his mind and asked the court to appoint new counsel. The court again granted his request and appointed Hernandez his fifth attorney. New counsel requested several continuances and Hernandez continued to waive time until December 9.

---

[2] See *People v. Marsden* (1970) 2 Cal.3d 118.

5

On December 7, 2022, the parties announced ready for trial. The court trailed the matter one day due to courtroom unavailability. The next day, the prosecution again announced ready. Defense counsel advised the court that she would be ready, except that right before Hernandez's case was called, she was sent out to begin a seven-day trial in the Banning courthouse for another client, with a second case trailing for the same client (the Williams cases).[3]

Hernandez did not want to represent himself or waive any more time. Defense counsel confirmed with the conflict panel that there were no other attorneys available take over Hernandez's case that day and begin trial the following day. Counsel believed it was very possible that the Williams cases would settle, though, so she asked the court to send Hernandez's case out to Banning as well, trailing the Williams cases. Alternatively, she asked the court to trail Hernandez's case one day in order to confirm her unavailability and/or give him a chance to find another attorney.

The court ultimately felt that defense counsel's contingent suggestions required it to keep "too many balls in the air." Given the circumstances that counsel was about to begin a seven-day trial in another matter, there were no other attorneys immediately available to substitute in on Hernandez's case, and courtroom availability was limited, the court found good cause to continue trial two weeks until December 21, 2022. It believed the trial on the Williams cases would be finished by then.

On December 20, 2022, defense counsel filed a motion to dismiss Hernandez's case based on a violation of his speedy trial rights under section 1382 and the California Constitution. Relying on *Johnson, supra,* 26 Cal.3d 557, counsel contended it was the state's fault that Hernandez was not

---

[3] The last day for Williams's trial to begin was December 8, 2022 and he did not want to waive any additional time.

brought to trial by December 9, and an unjustified delay attributable to the state cannot constitute good cause. In her view, trial was delayed because there were no attorneys available to take over Hernandez's case when she was sent out to trial in the Williams cases, and there were no attorneys available because everyone has "staggering caseloads" that have only grown larger since the pandemic. Counsel asserted there was a chronic backlog of cases and shortage of public counsel.

Trial was continued from December 21, 2022 to January 19, 2023, based on defense counsel's personal emergencies. The court heard the motion to dismiss on January 19. It disagreed with defense counsel that the delay was attributable to the "failure of the State to provide adequate attorneys available and ready" to handle Hernandez's case. Rather, it found the delay resulted from a discrete scheduling conflict between the Hernandez and the Williams cases.

As the court explained, this was not a situation where Hernandez and Williams both exercised their rights to trial within the first 60 days of arraignment, which happened to fall on the same date. Both clients had been waiving time for quite a while. Indeed, in the court's estimation, Hernandez had entered nearly 40 time waivers since his case was first set for trial at the end of 2020. Upon each continuance, the court allowed the parties to select the date of their next appearance.

The Hernandez and Williams cases were both set for trial on October 27. On that date, both clients waived time and counsel agreed to bring both cases back around December 8, 2022 which "did not have to happen." The court was sympathetic to the fact that scheduling a trial involved "a number of moving parts." But ultimately, the court found it was counsel's responsibility to avoid a conflict in the event both clients refused to waive

7

any more time.  In other words, counsel could have avoided this issue by simply choosing different dates.

For all these reasons, the court denied the motion to dismiss. Hernandez's trial began later that afternoon.

**C.** ***The Trial Court Reasonably Declined to Dismiss Hernandez's Case***

Maintaining his reliance on *Johnson, supra*, 26 Cal.3d 557, Hernandez insists that the court should have dismissed his case because the delay past December 9, 2022 was due to a lack of available public counsel.  In *Johnson*, the defendant was arraigned on February 2, 2023 and his trial was set for March 23.  (26 Cal.3d at p. 563.)  On that date, his public defender explained that he would not be ready to try Johnson's case until at least May 6 because he was in the middle of trial in another case, and then had three other cases to address that were older than Johnson's.  (*Id*. at p. 563 & fn. 2.)  Over Johnson's objection—he did not waive any time—the court found good cause to continue trial until May 6.  (*Ibid*.)  On May 6, his counsel requested another continuance because he still had three other trials to complete before Johnson's.  (*Id*. at pp. 563–564.)  The court again found good cause to continue trial over Johnson's objection.  (*Id*. at p. 564 & fn. 3.)  Ultimately, trial began 144 days after the information was filed.  (*Id*. at p. 565.)[4]

The Supreme Court held, in relevant part, that a public defender's heavy caseload or busy calendar does not *necessarily* constitute good cause to continue trial.  (*Johnson, supra*, 26 Cal.3d at pp. 570–572.)  Rather, good cause depends on whether or not the issue is attributable to the fault or

---

4    Under the version of section 1382 in effect at the time of trial in *Johnson*, "the statute's 60-day period ran from the filing of the information or the finding of the indictment, rather than from the date of the arraignment (as is now the case)."  (*Sutton, supra*, 48 Cal.4th at p. 548, fn. 9.)

8

neglect of the state—namely, the state's chronic failure to provide enough counsel for indigent defendants.  (*Id*. at pp. 571–573.)  The court explained:

> "The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their cases.  On the other hand, *routine assignment of heavy caseloads to understaffed offices*, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided.  A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial.  Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant." (*Id*. at p. 572, italics added.)

When a public defender requests a continuance based on their commitment to other clients, the *Johnson* court recommended that the trial court should first inquire whether counsel "could be replaced by another deputy or appointed counsel who would be able to bring the case to trial within the statutory period." (*Johnson*, *supra*, 26 Cal.3d at p. 572.)  If "the court cannot ascertain a feasible method to protect" the defendant's speedy trial right, it will have to grant a continuance.  (*Ibid*.)  "[U]pon a subsequent motion to dismiss, however, the court must inquire into whether the delay is attributable to the fault or neglect of the state; if the court so finds, the court must dismiss." (*Id*. at pp. 572–573.)  On the record in that case, the Supreme Court decided that the trial court erred because it failed to inquire whether another attorney could take over Johnson's case, and it made no effort to determine whether the public defender's congested calendar "arose from exceptional circumstances" or from the "failure of the state to provide defendant with counsel able to protect his right." (*Id*. at p. 573.)

9

The Supreme Court reaffirmed its decision in *Johnson* decades later, in *Sutton*, *supra*, 48 Cal.4th 533. In that case, "on the 60th day after arraignment, the appointed counsel of one of two jointly charged defendants was engaged in another trial that had extended longer than anticipated but that was expected to be completed very shortly. For that reason, the trial court found there was good cause to delay the trial of both defendants (without their consent) on a day-to-day basis until the attorney's other trial was completed. Ultimately, the trial in the present proceeding commenced on the 66th day after arraignment." (*Id.* at pp. 537–538.)

The *Sutton* court reiterated that when appointed counsel is unavailable to try one client's case within the 60-day period because of a conflicting obligation to another client, it is improper to delay trial "when it is *the state* that realistically bears responsibility for counsel's unavailability because of *its chronic* failure to provide a number of public defenders or appointed counsel sufficient to enable indigent defendants to come to trial within the prescribed statutory period." (48 Cal.4th at p. 552.) The court could not fault the state for the delay in that case: "[Codefendant's] counsel was unavailable on the 60th day after [his] arraignment because another trial in which counsel was engaged ran longer than anticipated. It is often difficult to predict how long a trial will take, and unexpected events that prolong another trial in which appointed counsel is engaged cannot fairly or reasonably be laid at the feet of the state." (*Id.* at pp. 552–553.) Indeed, "an unanticipated extended duration of another trial" is "the type of contingency that may occur even in a reasonably funded and efficiently administered trial court system that handles a large volume of criminal cases." (*Id.* at p. 554.)

10

The *Sutton* court also clarified *Johnson*'s distinction between " 'chronic conditions' " and " 'exceptional circumstances' " in evaluating good cause in this context. (*Sutton*, *supra*, 48 Cal.4th at pp. 554–555.) In referencing "exceptional circumstances," *Johnson* acknowledged "that even when a delay *is* attributable to the state's failure to provide sufficient resources to bring *all* cases to trial within the statutory period, there can be instances in which a trial court properly may find good cause for the delay under section 1382." (*Sutton*, at p. 555.) For instance, there may be "a large-scale riot or other mass public disorder" that creates "an inordinate number of cases that would overwhelm even a reasonably staffed public defender's office." (*Id.* at pp. 554–555.) *Johnson* did not mean to suggest that the unavailability of counsel can *only* constitute good cause when it is attributable to an " 'exceptional circumstance.' " (*Sutton*, at p. 555.) Other circumstances that the state is not responsible for—such as counsel's " 'unexpected illness or unavailability' " or their engagement in another client's trial—may still constitute good cause to delay trial under section 1382. (*Sutton*, at pp. 555–557 & fn. 12.)

Here, the trial court committed no abuse of discretion. When defense counsel became unavailable to try Hernandez's case on December 8, 2022—day 59 of 60—because she had just been sent out to trial in the Williams cases, the court confirmed with counsel that there were no other attorneys on the conflict panel available to step in and take Hernandez's case to trial the next day. Hernandez argues that the court should have sent his case to Banning or trailed it one day, as his counsel requested, in order to make sure that he could not be brought to trial by December 9. But those actions would have resulted in his trial beginning on December 9 only if the Williams cases settled or Hernandez found substitute counsel within one day. In our view,

11

the court sensibly found those predicate circumstances unlikely to play out, so it would be a better use of limited court resources to reschedule Hernandez's case for December 21—when his counsel would be finished with the Williams trial and available for his trial—instead of letting his case linger on calendar day to day.

Moreover, the trial court reasonably determined that the state was not at fault for defense counsel's calendar conflict. Hernandez maintains that the state failed to provide enough public counsel for indigent defendants, yet he was appointed five different attorneys throughout the proceedings. The fact that an attorney was not available the afternoon before the statutory period would expire does not evince a systemic failure at the hands of the state. On the record in this specific case, we agree that the delay is more fairly attributed to the sudden unavailability of defense counsel, which is an appropriate reason to continue a trial. (*Sutton, supra*, 48 Cal.4th at pp. 555–557 & fn. 12.) The record shows that counsel expected the Williams cases to settle. Minimally, we suspect she did *not* anticipate that both Hernandez and Williams would simultaneously refuse to waive any more time after consistently waiving time for many months. The reality that the Williams cases did not settle and both clients exercised their speedy trial rights at the same time is not necessarily defense counsel's fault—as the trial court

recognized, choosing a trial date involves "a number of moving parts"—but it is not the state's fault, either.[5]

## D. *Hernandez Has Not Demonstrated Any Prejudice*

Even assuming the trial court erred in finding good cause, we would still affirm the judgment because Hernandez has not shown any prejudice by the delay, which was relatively brief in light of the history of this case. If a defendant seeks relief *before trial* from the denial of their right to a speedy trial, they are not required to affirmatively show they have been prejudiced by the delay. (*Johnson*, *supra*, 26 Cal.3d at p. 574.) On appeal *following conviction*, however, a defendant must show prejudice. (*Ibid*.)

In one short paragraph, Hernandez argues he was prejudiced because his case "had already been continued dozens of times," he "was well within his rights to 'put his foot down' and insist that his case be tried in a timely manner," and his trial was continued 12 days past December 9, 2022 over his objection. These points accurately recount the circumstances of the delay, but they do not describe *any harm resulting from* the delay.

---

[5] Hernandez writes in the conclusion of his argument that "it was the lack of court appointed attorneys *and the congestion of the court calendar* that caused the impermissible delay." Beyond a stray reference to *People v. Engram* (2010) 50 Cal.4th 1131—in which the Supreme Court held that a trial court in Riverside County properly dismissed a case based on a lack of available judges or courtrooms as the state had failed "over a considerable period of time, to provide a number of judges sufficient to meet the needs of Riverside County's rapidly growing population and caseload" (*id*. at p. 1138)—Hernandez does not develop an argument that the delay in his case was due to court congestion. We therefore do not address the point. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"].) In any event, in reviewing the transcript of December 8, 2022, the court never suggested there was no courtroom available to Hernandez as of that date, just that availability was limited in general.

Hernandez does not argue, for instance, that had the trial court dismissed his case based on a speedy trial violation, the prosecution would have been unable to refile the charges against him. To the contrary, at the hearing on the motion to dismiss, defense counsel acknowledged that the prosecution could simply refile. (See *Johnson*, *supra*, 26 Cal.3d at p. 573 ["Under section 1387, the dismissal of a felony charge for lack of a speedy trial is not a bar to further prosecution unless the charge has been previously dismissed on such grounds"]; see also *People v. Lomax* (2010) 49 Cal.4th 530, 557 ["Subject to certain exceptions, section 1387, subdivision (a) prohibits renewed prosecution for the same offense if the matter has been dismissed *twice* for speedy trial violations" (italics added)].) Nor does Hernandez make any effort to explain how the delay affected his trial or defense. "Indeed, [Hernandez] by his silence on this issue essentially concedes the absence of prejudice." (*Johnson*, at p. 574.)

## DISPOSITION

The judgment is affirmed.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.

14